CASE 100—INJUNCTION, PATENT—MARCH 24, 1885.

# Hillman by &c. v. Hurley, &c.

APPEAL FROM LIVINGSTON CIRCUIT COURT.

1. In order to authorize an injunction against a defendant from cutting timber and removing it, the plaintiff must not only be entitled to the possession of the land, but he must be in the actual possession.

2. The injunction will not be granted unless the defendant be insolvent or the injury is irreparable, so that adequate compensation in damages cannot be obtained at law.

3. A patent for a tract of land which excludes "all surveys of record in the boundary, and likewise one hundred acres belonging to S. M., with its appurtenances," is too indefinite, and is void.

C. BENNETT, W. D. GREER AND JNO. K. HENDRICK FOR APPELLANT.

1. The Hillman survey of land we believe to be well identified. The Tennessee line fixes the boundary on one side, and it is as certainly fixed upon the other.

2. The agreement in this record settles the right of appellant. It is agreed that the land in controversy is within appellant's boundary, and that he is the owner of the land.

3. We submit that it makes no difference in law whether appellant had the actual possession of the land or not. (Berts v. Hutchinson, 17 B. M., 498; Story's Eq. Ju., section 861; 3 Bush, 125; 5 J. J. Mar., 337; Sneed's Rep., 155.)

4. As to the alleged indefiniteness of the patent, we refer the court to the following authorities:

*Patent Conclusive.*—4 Bibb, 329–30, Bledsoe's Heirs v. Wells; 4 Mon., 51, Jennings v. Whittaker; 3 Peters, 341, Stringer v. Young's Lessees; 4 Dana, 501, Cain v. Flynn.

*Excess of Quantity Don't Vitiate.*—1 Rich. Law, s. c. 491; 12 Bush, 381, Marshall v. McDaniel.

*Rule of Construction of Grants.*—10 Coke, 67b, 5 volume, 368, Churchwarden case; 4 Howard, 376, Foxcroft v. Mallett; 11 Humphreys, 312, Funa v. Maning; 4 Bacon's Abridgment, 508–26; 11 Peters, 557–89–90, Charles River Bridge v. Warren Bridge; 13 Gratt., 587, Covington v. Goddin; 3 John., 387, Jackson v. Hudson; 10 B. Mon., 145, Armstrong v. Mudd.

*What Exceptions are Valid.*—4 Cruise's Digest, 2 volume, 226; 1 Shepperd Touchstone, 77, 79, 80; 4 John., 82–3, Thompson v. Gregory; 9 John., 78, Hornback v. Westbrook; 34 Barb., 566, Jones v. Van-Auken.

Hillman by &c. v. Hurley, &c.

*Undescribed Exclusion Don't-Vitiate a Grant.*—Hardin, 34, Drake v. Ramsey; *Ib.*, 386, Craig v. Coger; 4 Bibb, 154–6, Yocum v. Renfro. &c., 2 Mar., 395, Yocum v. Renfro's Heirs; Lit. Se. Cases, 281, Madison's Heirs v. Owens; 5 Peters, 86, Scott's Lessees v. Ratliffe; 9 Dana; 233–4, Thruston, &c., v. Masterson; 11 Howard, 297, 301–2–3, Van Rensselaer v. Kerney; 3 Head, 48–9, Bowman v. Bowman; 7 Heisk., 719–21, Fowler v. Nixon; MS. opinion, June, 1872, Sears v. Bryant; MS. opinion, September, 1876, Stewart v. Bolt.

*Sufficiency of Description.*—4 Cruise's Digest, Greenleaf's ed., volume 2, page 242; 1 Wall., 215, U. S. v. D'Aguire; 4 Bibb, 288, Starling v. Blair; 7 Cranch, 618, Fairfax's Dev. v. Hunter; 17 Howard, 545, Fremont v. U. S.

*Maxim "Id Certum Est," etc.*—Brown's Legal Maxims, side page 482, 625; 4 Bacon's Abridgment 524; 1 Tenn., 530, White's Lessees v. Hembre; 10 B. Mon., 145, Armstrong v. Mudd.

*Surveys and Patents.*—2 Statute Laws of Kentucky, 1021; 3 Statute Laws of Kentucky, 387; 5 Mon., Alexander v. Lively, 159; 7 Baxter, 602–3–4, Webb v. Haley; 2 Statute Laws of Kentucky, 1342.

BUSH & TRAIL FOR APPELLEES.

1. The pleadings and evidence show that the land was in the actual possession of appellees, and claimed by them.

2. Appellant was not in possession, and never had been in possession of the land.

3. The patent relied upon by appellant is void for uncertainty. (Hamilton v. Fugett, 81 Ky. Rep., 366; 5 Cal., 119; Story's Eq., section 928; Kelley v. Donahoe, 2 Met., 482; 13 B. Mon., 329; Stat., 1854, volume 1, 167; Rev. Stat., volume 2, 50; Gen. Stat., 543; 6 Bush, 44.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This action was brought to enjoin the appellees from cutting and removing timber from a certain tract of land.

The substantial averments of the petition are, that the appellant is the owner, and in the actual possession of the land; that the appellees have cut a large quantity of valuable growing timber thereon, worth $250, and have hauled away a portion of it; that they were then cutting and hauling it, and would continue to do so, whereby the appellant would suffer irreparable injury. It does not charge that the ap-

pellees are insolvent. The title and possession of the appellant is denied, but not the cutting and removal of the timber; and the appellees claim title to the land under patents junior to that of the appellant, which is not only shown by the testimony to cover the land, but it is so admitted. It appears, however, that the appellant has never had the actual possession of the land, while the appellees have held all they claim under a marked boundary, and have, as the testimony tends to show, had some of it inclosed for about ten years.

It is a general rule that the remedy by injunction does not lie to prevent a mere trespass, if the injury that may be inflicted is not irreparable, and if there be an adequate legal remedy. The ground upon which equitable intervention proceeds is the inadequacy of the legal remedy, and this is the broad foundation of remedial jurisdiction in equity. The policy of the law is reparation for an injury, while that of equity is prevention; and the latter only supplies the deficiencies of the former in the prevention of trespasses, when the law does not furnish a complete remedy.

It was held in the leading case of Jerome v. Ross, 7 John. Ch., 315, the opinion being the last one ever delivered by Chancellor Kent, that equity would interfere by injunction in cases of trespass, if the mischief reached to the very substance and value of the estate, and was irreparable in damages or to prevent a multiplicity of suits. The earlier cases had held more closely to the old rule, that an injunction to prevent an injury to real estate was allowable only

·in case of waste, or ·where there was a privity of estate ·between the parties, and that compensation by way of damages was the only remedy for a trespass.

Equitable intervention as to it was then considered a dangerous novelty ; but, since the case above cited, there has been a gradual change in the inclination of the courts as to equitable interference ·in matters of trespass ; and while the rule laid down in it has been generally followed, yet it has been with a liberal view and a disposition to listen with more favor to an application to restrain a trespass than was the case at that time ; and an injunction to do so will now ordinarily be granted if the threatened trespass will destroy the very substance of the estate "in the character in which it has been enjoyed ;" or, if so permanent and continuous that it can never be said to be complete, so that the injury can be computed ; or, if the injury can not be estimated in money ; or, if so vexatiously persisted in that a multiplicity of suits must result ; or, if committed by one who is insolvent, and against whom a verdict will be valueless.

The same character of possession of real estate, however, is necessary to maintain an injunction to prevent a trespass to it as to support trespass *quave clausum fregit.* Unless the plaintiff is in the *actual* possession at the time of the injury or threatened injury, he must fail in either action. This was the rule of the common law, and it prevailed in this State until the passage of the act of the Legislature of March 10, 1854, by which the owner of real estate was permitted to sue ⁚ in trespass, even if he did not have the ·actual pos-

session at the time of the injury to it. This act was, by its title, however, made a part of chapter 50 of the Revised Statutes, entitled "Inclosures and Certain Trespasses," and when the General Statutes were adopted, containing a chapter with a like title, the provisions of the act *supra* were not re-enacted; and, since they must be considered as containing all the law upon the subjects indicated by the titles, it follows that with their adoption the old rule again prevailed.

A patent, when valid, only invests the patentee with legal or constructive seizure; and it is clearly shown by the testimony that the appellant never had any actual possession of the land described in his petition.

It is attempted to avoid this trouble upon the ground that when the timber was severed from the soil it became personalty; that it was then, by legal construction, in the plaintiff's possession; that he then had a right to maintain an action for or to enjoin its removal from the land; and that the prayer of the petition is not only that the appellees be enjoined from cutting and removing timber, but that they be enjoined from removing what they had already cut. Their doing the latter would in itself be but a temporary trespass, for which, in the absence of insolvency, adequate compensation could be had at law; and when not only a remedy, but an adequate one, exists at law, the aid of the Chancellor can not be invoked.

There is, however, a prevailing reason why the appellant can not maintain his action upon this ground, and it is also an additional and conclusive one against his doing so for the alleged trespass to the realty.

The patent to him, and upon which he bases his claim of title, was issued on July 16, 1846, upon a survey made upon February 13, 1845. It purports to convey to the patentee 4,000 acres.

The survey given and described in it, as shown by the survey and testimony in this case, embraces 9,551 acres ; and by way of identifying the 4,000 acres, it gives the entire survey, and then says, "excluding all surveys of record in the above boundary, and likewise 100 acres belonging to Samuel P. L. Marshall,. with its appurtenances." This is the only description given in the patent of the land attempted to be patented by it.

It does not even give the names of the excluded surveys. The rule that that is certain which can be made so: *certum est quod certum reddi potest* does not aid it, because it contains nothing from which it can be certainly ascertained what land is excluded. The mere statement, "excluding all surveys of record," is too indefinite. It is as uncertain as if it had said. "excluding prior grants," since they are of record. In the case of Hamilton v. Fugett, &c., 81 Ky. Rep., the patent in question was for 74,866 acres, excluding 60,518 acres of prior grants, which were not identified. by it, and it was held void.

In the one instance the whole survey was patented, less a certain quantity excluded, but undefined, while in the other 4,000 acres of vacant land is attempted to be conveyed out of a survey of 9,551 acres, without in any way defining or furnishing the means to identify the lands that had been previously surveyed.

The one is as indefinite as the other. The result

would be to appropriate vacant lands without regard to the rights of others, or identifying the lands they might own, and would necessarily lead to much vexatious litigation. If 5,000 acres could thus be taken within the sweeping lines of a survey, equally as well could one-fourth or more of the State. Public policy forbids this, and, in the language of the court in Hamilton v. Fugett, &c., *supra:* "To sustain this patent would violate the whole purpose and spirit of the statutes regulating the entry and grant of vacant lands"

The appellant, never having been actually seized of the land, could not maintain an injunction to prevent a trespass upon it, even if his patent were valid; but it being void, and he never having been in possession of the timber already cut, and not being entitled to it, can not maintain it as to it.

Judgment affirmed.