Tomlinson *v.* Rubio.

---

## TOMLINSON *et al.* v. RUBIO *et al.*

BILL for an injunction to restrain defendants from taking possession of certain real estate—a warehouse and wharf. Complaint avers plaintiffs' title to the property and their possession; that defendants have conspired together, and are threatening to take by force the property from plaintiffs, and are making preparations, and using violent means to drive plaintiffs and their workmen from the premises; that plaintiffs are in possession of teams, carriages, etc., for transporting goods from said warehouse and wharf to Los Angeles, as a business connected with said premises, and that, unless defendants are restrained from executing their threats, plaintiffs will be ruined in their business, and their property be destroyed : *Held,* that these allegations are insufficient to authorize an injunction—there being no averment of *insolvency of defendants,* and the complaint not showing that there is no adequate remedy at law.

In such case, forcible entry and detainer would be a speedy mode of regaining the possession, if taken by defendants, and for other damages the usual proceedings at law would suffice. That the premises are used in connection with the transportation business, which would be interrupted by the threatened trespass, is not alone a ground for equitable interference.

APPEAL from the First District.

Bill for an injunction. The complaint avers, in substance:

1. That, in 1856, Augustus W. Timms erected, at the port of San Pedro, a warehouse and wharf, leading therefrom out into the Pacific ocean—both of which were so erected on the beach of the ocean below high water mark. That said wharf was constructed for the transportation of goods to and from vessels and said warehouse, which was built for the storage of such goods; that after said warehouse and wharf were so constructed, Timms used and occupied the same without molestation for the purposes above indicated, until the spring of 1858.

2. That, on the seventh of April, 1859, Goller and plaintiff, Tomlinson, who had derived title to the premises by mesne conveyances from Timms, and occupied the same, and run a line of teams from the warehouse to Los Angeles since June, 1858, leased for the term of six months, and delivered to the defendant Banning, said warehouse and wharf, and their teams, etc., who on the same day took into his exclusive possession said property and business.

3. That on the twenty-fourth of August, 1859, Goller sold all his right, title and interest in said property to the plaintiffs Eells and Ball, subject to said lease.

4. That on the seventh of October, 1859, (six months after the date of said lease) about sunset of that day, Banning delivered to plaintiffs the personal property mentioned in the lease aforesaid—the most of which was at and about said warehouse and wharf—and on the following morning (October 8th) the plaintiffs peaceably took formal possession of the warehouse and wharf, and other property.

5. That defendants have combined and confederated together to dispossess by force, and keep the plaintiffs out of possession, and use, and enjoyment thereof—which use and enjoyment the plaintiffs allege they are entitled to have unmolested. That plaintiffs and their grantors had full, free and legal right to build the said warehouse and wharf, and to use, enjoy and possess the same undisturbed and unmolested.

6. That defendants Sandford and McDonald are in the employment of defendant Banning, and have threatened forcibly to drive plaintiffs and their workmen from said warehouse and wharf, and to take possession thereof; and by force to deprive and hinder plaintiffs of the use and enjoyment of said property. That Sandford and McDonald have around said warehouse and wharf a large number of men, armed with

guns, pistols and other dangerous weapons, preparing by force to drive the plaintiffs from and dispossess them of said premises, and the use thereof. "And the plaintiffs further allege, that the said defendants have threatened to dispossess the said plaintiffs, and take possession of said property and premises, and deprive said plaintiffs of the use thereof;" and are making preparations and using violent and improper means to drive plaintiffs from said premises, and the enjoyment thereof.

7. That plaintiffs are in the peaceable and quiet possession of said property, and are in the possession of a large number of teams and carriages, &c., for transporting goods, &c., from said warehouse and wharf to Los Angeles, and that unless defendants are restrained from executing their threats, the plaintiffs will be ruined in their said business, and their said property will be sacrificed and destroyed, and they will thereby be ruined and impoverished.

The plaintiffs in conclusion pray for an injunction in the usual form in such cases, and that the same may be made perpetual.

On the tenth of October, 1859, an injunction was granted by the District Judge, and served. Thereupon defendants moved to dissolve the injunction on affidavits, which was opposed by plaintiffs on the complaint and affidavits. On the first day of December, 1859, the motion came on to be heard, and the injunction was dissolved; plaintiffs excepting.

The affidavits used on behalf of defendants were to the effect, that in a certain cause of forcible and unlawful detainer, before Charles E. Hale, Esq., a Justice of the Peace for Los Angeles township, in which Rubio was plaintiff and Banning was defendant, a writ of restitution was issued by the Justice on the sixth day of October, 1859, for the recovery and delivery to Rubio of certain premises, of which the property in controversy forms part; that said writ of restitution was delivered to the Sheriff of Los Angeles county on the the day last aforesaid; who, by virtue thereof, proceeded to take possession of said premises and deliver the same to Rubio, and that the premises were peaceably surrendered by said Banning to the Sheriff "on behalf of said Rubio," and Banning deposed that no part of said property had ever been delivered by him to said plaintiffs.

On the part of the plaintiffs, the affidavits of Tomlinson, D. Campbell, J. G. Campbell, A. W. Timms and George W. Gift, used in opposing said motion, contain, in substance, statements supporting the allegations of the complaint. On the eighteenth of October, 1859, the

Tomlinson *v.* Rubio.

defendants demurred that said complaint does not state facts sufficient to constitute a cause of action.

The Court below sustained the demurrer, and dismissed the complaint. Plaintiffs appeal from the order dissolving the injunction, and from the final judgment.

*John Currey,* for Appellants.

I.   To give the Court below equitable jurisdiction in the case, it was only necessary for the plaintiffs to state in their complaint the following substantive facts :

1. That they had a present, vested and exclusive right, interest and property in the subject matter, to protect which this action is brought.

2. That the defendants had conspired or confederated together to invade such right, interest and property ; and were threatening to proceed, or were proceeding to deprive, by lawless violence, the plaintiffs of the possession and enjoyment thereof.

3. That the injury which would ensue to the plaintiffs by the attainment on the part of the defendants of the object of their conspiracy, by the execution of their threats, would, in an equitable view, be either irreparable or without adequate remedy at law ; or that the threatened acts of the defendants, fully consummated, would require for redress a multiplicity of actions at law.

If these points be determined in the affirmative, it follows that the Court below erred in dissolving the injunction, and in giving judgment for defendants.   The demurrer admits the allegations of the complaint, and these amply state the facts embraced in the foregoing positions. The rule seems to be settled, that if the party applying for an injunction has a vested right, either legal or equitable, which may be greatly affected by the commission of the acts sought to be restrained, in such case the remedy of injunction may be properly invoked and obtained. (*The Corporation of New York* v. *Mapes,* 6 Johns' Ch. R. 50.)

In this case, the demurrer admitting the title of plaintiffs, there was no necessity for an action at law to establish it.   (Willard's Eq. Jur. 392 ; *Tuolumne W. Co.* v. *Chapman,* 8 Cal. 397 ; *Wood* v. *Sutcliffe,* 8 Law and Eq. R. 220 ; *Attorney General* v. *Railway,* 3 Id. 362 ; *Kemp* v. *Sober,* 4 Id. 64 ; *Corey* v. *Railway,* 3 Hare, 593 ; *Clayton* v. *Attorney General,* 1 Cooper, 139 ; *Belknap* v. *Trimble,* 3 Paige, 601 ; *Ford* v. *Rigby & Irwin,* 10 Cal. 449.)

II.   Equity will interfere to restrain the commission of such injuries

to property and to business as are set forth in the complaint. (2 Story's Eq. Jur., secs. 927, 928.) Where the injury which may or will ensue from the wrongful acts of the defendants, consists in the loss of trade, or the destruction of the means of subsistence, or permanent ruin to property, Courts of Equity will interfere, by injunction, in furtherance of justice. (*Wynstanley* v. *Lee*, 2 Swanst. 335; *Attorney General* v. *Nichol*, 16 Ves. 342; *Cherrington* v. *Abney*, 2 Vernon, 646; *Earl Bathurst* v. *Burden*, 2 Bro. Ch. R. 64; *Nutbrown* v. *Thornton*, 10 Ves. 163; *M. & H. R. R. Co.* v. *Artcher*, 6 Paige, 83; see also *Bonaparte* v. *Camden & Amboy R. R. Co.* 1 Bald. 231; *Livingston* v. *Livingston*, 6 Johns. Ch. 498; *Belknap* v. *Belknap*, 2 Id. 472; see especially *Osborn* v. *Bank of U. S.* 5 Pet. Cond. 759, 760; Story's Opinion in *Webb* v. *The Portland Manuf. Co.* 3 Sum. 192–198; *Norton* v. *Jackson*, 5 Cal. 264; *Johnson* v. *Ricket*, Id. 219; *Hanson* v. *Gardiner*, 7 Ves. 310; *Thomas* v. *Oakley*, 18 Id. 184; *Norway* v. *Rowe*, 19 Id. 147; *N. Y. Print. and Dyeing Estab.* v. *Fitch*, 1 Paige, 97.)

*Heydenfeldt*, for Respondents.

1. The injunction was properly dissolved. The case made by the bill does not show irreparable damages, nor allege insolvency of the defendants, which are the usual grounds for injunction in cases of trespass. Nor is any trespass alleged, but only the fear of it, produced by threats; there is no authority for injunction upon such a reason. Besides, the plaintiffs allege a claim to the property set up by the defendant Rubio. All the authorities hold, that this alleges the plaintiff out of Court—because Chancery will not interfere until the title is settled and indisputable.

If the affidavits read on the motion to dissolve are to be considered, then it is evident the complainants have mistaken their remedy. They should have resorted to forcible entry and detainer, or a peace warrant, if they are in possession. For the same reasons which sustain the dissolution of the injunction, the demurrer to the bill was properly sustained.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This bill was filed for an injunction to restrain the defendants from taking possession of certain real estate—being a warehouse and premises. The bill does not aver the insolvency of the defendants, nor show

that there is no adequate remedy at law. The action of forcible entry and detainer would, upon the facts, be a speedy mode of regaining a possession taken as the bill charges the defendants are preparing to take possession of this property; while, for any other damages, the usual proceeding at law would be a sufficient and effectual remedy. That this estate is used by the plaintiff in connection with business which would be interrupted by this threatened trespass, is not alone a ground for equitable interposition; for this is, if not the usual, a very frequent consequence of such trespasses.

Judgment affirmed.