### JOSEPH C. BARNES v. HENRY A. NEWTON.

INJUNCTION. Where two parties are contesting before the United States land department for a tract of government land, and the final decision is had in favor of one of such parties, the successful party may institute an action in the district court for an injunction to have his adversary enjoined from further interfering with his possession of the premises, and in such cause the court may properly award an injunction which prevents the unsuccessful party in the contest proceedings from further occupancy of the disputed premises.

*Error from the District Court of Oklahoma County.*

This is a suit for an injunction brought by a successful land contestant in the district court of Oklahoma county, to restrain his adversary from a further trespass upon or interference with him in the use and occupation of the tract of land in dispute between the parties. The opinion states the facts.

*Amos Green & Son,* for plaintiff in error.

*J. H. Everest,* for defendant in error.

The opinion of the court was delivered by

DALE, C. J.:   Henry A. Newton commenced an action on May 3, 1894, in the district court of Oklahoma county against Joseph C. Barnes, asking that a restraining order issue to prevent Barnes from breaking sod or trespassing upon any portion of the southeast quarter of section 2, in township 13 north, range 4 west, land situated in Oklahoma county. The record before us does not disclose whether or not any action was taken upon the application for a restraining order. However, on

November 9, 1894, an amended petition was filed, and on such amended petition the cause was prosecuted. The pleadings in the case and the judgment of the court before whom the cause was tried are all we have presented in the record, and from these it appears that the tract of land above described was, shortly after April 22, 1889, filed upon as a homestead by one Morris; that Newton, on July 26, 1889, filed a contest against the entry of Morris, and that such contest was based upon the ground of the disqualification to enter land upon the part of Morris; that Barnes claimed to have made settlement upon the land July 5, 1889, and in August, of the same year also filed a contest against the entry of Morris, the grounds for such contest being in effect the same as those in the contest of Newton; and on August 30, 1889, Barnes purchased the relinquishment of Morris, paying therefor $100. On January 4, 1890, Newton filed a supplementary contest against the entry of Morris, the relinquishment of Morris not having been presented at the land office by Barnes. While the contests of Newton and Barnes were so pending, Barnes, on April 15, 1890, presented at the land office the relinquishment of Morris, and was permitted to file a homestead entry for the tract, subject to the rights of Newton, the prior contestant. After Barnes' entry went of record, Newton, instituted proceedings against such entry, claiming that he was entitled to a preference right of entry as against Barnes by reason of having had the prior contest. This hearing resulted favorably to Newton, and on April 6, 1894, the cause reached a final determination; the entry of Barnes was canceled and Newton permitted to homestead the land.

Both Newton and Barnes have resided for a number of years on the land claimed by both parties. The

petition for injunction alleges, among other things, insolvency an the part of Barnes, and an attempted breaking of sod in that part of the land used by Newton as hay and pasture land, and which, if permitted, would work irreparable injury to Newton.

The answer of the defendant below is very lengthy, and after setting forth the various dates of his settlement, contest, filing, etc., and his qualifications to enter the land, alleges, in substance, his purchase of the relinquishment of Morris, payment therefor, and that the relinquishment was not the result of the contest upon the part of Newton; that his homestead entry was never legally canceled; that the commissioner of the general land office, under a mistake and misapprehension, both of law and facts, and without any valid evidence and upon false evidence upon the part of Newton, canceled his entry. That the decision of the commissioner was contrary to the rules of the land department, and that the secretary of the interior was misled and deceived and never clearly comprehended the law of the facts on which his decision was based, and for such reasons their action was void; that at the time he, Barnes, purchased the relinquishment of Morris, he had no knowledge of any pending contest by Newton, and that no proof was offered by Newton establishing the disqualification of Morris. That no preference right to enter the land was secured to Newton by reason of his being the first contestant, because Morris, at the time of his relinquishment, had no knowledge of such contest. Many other matters are alleged in the answer, which are unnecessary to notice, as in the absence of the record showing the proceeding had upon the trial, they cannot be considered.

The case appears to have been tried before a referee, and evidence taken and a judgment rendered upon the report, but as none of the proceedings before the referee are brought into the record, the sole question before us to be considered is whether or not the judgment is sustained by the pleadings. A copy of the judgment is before us, and from an investigation thereof it appears that an injunction was granted which in effect prohibited Barnes from further interference with Newton's possession in the land, except that Barnes was permitted, at any time within sixty days, to remove any improvements he might have upon the land.

Injunction has been applied in cases similar in character to that under consideration by the supreme court of this territory. (*Reaves v. Oliver*, 3 Okla. 62; *Woodruff v. Wallace*, 3 Okla. 355). And it has also been held that where two persons were each contesting for a right to a tract of land covered by a homestead entry, the courts had jurisdiction of the subject matter of possession, and after ascertaining the right of possession, to enforce the same by injunction. (*Sproat v. Durland*, 2 Okla. 24; *Jackson v. Jackson*, 17 Ore. 110, 19 Pac. 847; *Lee v. Watson*, [Mont.], 38 Pac. 1077; *Wood v. Murry*, 85 Ia. 585, 52 N. W. 356).

It is claimed, however, upon the part of appellant, that in the case we are now passing upon a different question is presented; that under the answer the appellant is the equitable owner of the land, and that the court below should have so found and refused the order of injunction. This contention is not tenable. The question of title is a matter to be determined by the tribunal created by congress for the purpose of trying such question. (*Marquez v. Frisbie*, 101 U. S. 473; *Johnson v. Towsley*, 13 Wall. 72; *Shepley v. Cowan*, 91 U. S. 330).

That the courts will not interfere with the actions of the land department until after the title has passed from the government is equally well settled by the cases last cited. Under the decisions referred to the only extent to which a court may go is to determine the question of possession. This is clearly authorized and has for its support abundance of authority besides the decisions of the supreme court of this territory. (*Marquez v. Frisbie; Jackson v. Jackson*; *Wood v. Murry; Lee v. Watson, supra*).

But it is insisted that plaintiff below had an adequate remedy at law for the relief sought, and that injunction will not therefore lie in this case. Whether or not the law affords an adequate remedy is a question which must always depend upon the particular facts presented in each case. Counsel for appellant fails to point out the legal remedy under the laws of this territory which will afford a speedy relief. It has been decided that ejectment will not lie. (*Couch v. Adams*, 1 Okla. 17, and cases therein cited). The action of forcible entry and detainer might lie, but by delays and appeals a party in possession of a homestead could keep his adversary out of the possession of the land for years, while the law of congress relating to homesteads contemplates an exclusive and immediate possession. And if forcible entry and detainer were depended upon, a party whose cause has been fully determined in a competent tribunal would be left to harass and annoy the person who has, after years of litigation, been awarded the exclusive right to the occupancy of the land. Why should the courts hesitate in granting the relief by injunction? The legal status of the parties has been determined, and the contestant who remains upon the land after his rights have been finally and adversely

passed upon, is there without color of right and as a mere naked trespasser. This remedy, by injunction, to dispossess after the courts have settled the title, is well established in England. (High on Inj. § 360 and note; 2nd Story's Eq. § 959). The tribunal created by congress to award title to the land taken under the homestead law is the law tribunal for the purpose of determining all questions concerning such title, and in so · far as its jurisdiction obtains is comparable to the district courts of this territory in like manner as are the courts of those states where they still have courts of law and chancery as a separate and distinct jurisdiction. The courts of this territory are the courts of chancery to which litigants for public lands may come for relief after they have established their title in the tribunals of the law. If the law tribunal had jurisdiction over the subject matter of possession, as well as of title, would they not as a part of their judgment give a writ of possession? Not having that jurisdiction, and the courts of the territory possessing it, what objection can be reasonably urged against granting immediate relief, and what good reason can be advanced in favor of compelling a party whose legal status has been determined, finally, to commence another action for the purpose of obtaining that which has already been legally declared to belong to him? There ought to be an end to litigation between the same parties over the same subject matter some time. But if the position of counsel for appellant be correct, the only right obtained by a successful litigant in a tract of government land is the right to commence a suit for the possession thereof. The language of the eminent jurist found in § 360, *supra*, wherein the learned judge said: "An injunction for possession is not a new thing in a court of equity. It has long been used in England; it is

28—v.

permitted in certain cases by the aforesaid act of assembly, and it would disgrace our laws and the administration of justice if, after title to land has been established by the adjudication of the court, there could be no way of obtaining possession, but after obtaining judgment in ejectment. (1st Harris & Johnson, 373 Md.)."

Here, too, in this territory, the law tribunal created by congress to adjudicate the title having fully passed upon that question, it would be strange, indeed, if the chancery power given in our Organic Act to the district courts is impotent to effectuate the judgment of such tribunal. This whole principle has been distinctly approved by Story in his work on Equity Jurisprudence, § 959, and in support thereof he quotes from the decision of the court as follows:

"And it is said by an eminent jurist that courts of equity also interfere and effectuate their own edicts in many cases by injunctions in the nature of a judicial writ or execution for the possession of the property in controversy; as, for example, by injunctions to yield up, deliver, quit or continue the possession. They have been distincily traced back to the reign of Elizabeth and Edward the VI, and even to Henry the VIII, and in some respects they bear an analogy to sequestrations."

When and under what circumstances a court of equity will interfere by injunction where the remedy at law is insufficient, and what is deemed an insufficient remedy at law is well settled by the writers upon the subject of injunction and the decisions of our courts. In vol. 1, § 370, Spelling Ex. Rem. the rule is announced as follows:

"But it is a general principle that the legal remedy which warrants the refusal of relief by injunction must be plain and adequate; in other words as practical and convenient for attaining the ends of justice and its prompt administration as that of equity."

The supreme court of the United States in *Watson v. Sutherland*, 5 Wall. 74, by Mr. Justice Davis, said:

"The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and an application of this principle to a particular case must depend altogether upon the character of a case as disclosed by the pleadings."

And in *Boyce's Ex. Rs. v. Grundy*, 3 Pet. 210, the same court states the principle thus:

"But it is not enough that there is a remedy at law; it must be plain and adequate, or in other words as practical and efficient to the ends of justice, and its prompt administration as the remedy in equity."

In *English v. Smock*, 34 Ind. 115, the language in *Boyce's v. Grundy, supra*, is quoted with approval, Numerous other citations might be supplied to the same effect. In this territory we have a peculiar condition of affairs, different from those heretofore existing in this country. The desire for lands, which is inbred in the American people, is here most strongly evidenced. Contests almost innumerable were started in the land offices by adverse claimants to public lands when this country was declared a part of the public domain, and, in most cases, owing to a press of business, to opportunities for appeal, first to the commissioner of the general land office, and from him to the secretary of the interior, followed by petitions for review, the litigation has been extended, and it has taken from five to seven years to get a final decision from such land department. This litigation has been in the main between parties who could illy afford it. And in some instances these conditions have produced feuds and frequently deeds of violence have resulted from rival claimants living upon and attempting to farm and occupy the same tract of land; and after,

through years of trouble and litigation, a party has succeeded in establishing an exclusive right of occupancy in the land, to say to him that he must again start upon a wearisome road through another law tribunal to obtain that which the law has by its decree absolutely fixed in him, is to demand in him an amount of patience and forbearance which taxes the endurance of humanity. If the party against whom the decision runs has been wronged by the land tribunal, he still has a remedy in the courts after the patent has run to the successful party. This remedy will obtain in his favor if he is off the land as well as if he were to remain thereon. But until the patent does issue, the party who is successful in the contest proceedings is entitled to have an undisputed and quiet possession of the land, and to obtain the same in a speedy manner.

The judgment of the lower court is affirmed.

Keaton, J.: I concur fully.

Tarsney, J.: Since coming to this bench I have not had the time to fully consider and investigate the principle involved in this case, and for that reason I am not prepared to assent or dissent to the principle of law herein stated; but owing to the fact that the conclusion reached in this case has been for some time the rule of decision in this territory, I concur in the conclusion of the chief justice in this case.

Bierer, J.: This is the first case that has followed the authority of *Woodruff v. Wallace*, 3 Okla. 355. I concur in this decision because it has now become the law of this jurisdiction, and my concurrence in the future to decisions in cases wherein mandatory injunction is recognized as a proper remedy to recover the possession of land in the peaceable possession of another must be

understood to be an acquiescence in the law as established by the decisions of this court, to which I disagreed and still disagree, and not an assent to the principle on which these decisions are based.

McAtee, J., dissenting.

Dissenting opinion by

McATEE, J.:   It appeared from the amended petition, answer and reply, upon which this case was heard, that the plaintiff had been, for four years preceding the commencement of the action, an actual resident upon a part of the tract of 160 acres of land here contended for, as a homestead, and in actual possession of 121 acres thereof, and that the defendant was residing upon a portion of the land and in actual possession of 39 acres of it; that the defendant would, unless restrained by the court, continue to reside upon, improve and cultivate a portion of the tract of land, and that, as it was alleged, he was trespassing upon the right of the plaintiff to the full and exclusive possession of all of said tract of land, and that he would, " unless restrained by the court, break out and destroy all the meadow and pasture land on the said tract," and that the continued trespass thereon constituted an irreparable injury to the plaintiff, for the reason that the plaintiff had no adequate remedy at law, and declared that he "believed the defendant to be utterly insolvent," and that the "plaintiff would have no recourse in damages." The petition prayed for a mandatory injunction, restraining the defendant, and all persons acting under him, from continuing to reside upon, improve or cultivate any portion of said tract of land, and requiring him and all persons under him to remove from said tract of land within a reasonable time, and that he

should be perpetually restrained and enjoined from using or occupying any portion of the land or interfering with the full possession by the plaintiff of the whole tract of 160 acres.

A demurrer of the defendant to the amended petition, that, (1) it did not state facts sufficient in law to constitute a cause of action against the defendant, and to entitle the plaintiff to a mandatory or any other injunction, and (2) that the court had no jurisdiction of the subject matter, the title to the tract of land described therein being in the United States, and no final certificate or patent having been issued to the plaintiff, was, by the court, overruled, and the defendant permitted to answer.

The defendant, by his answer, denied that the plaintiff was the equitable owner, or had any equitable or any other interest in the premises described in the petition, and denied any right of possession on the part of the plaintiff; set up a state of facts upon which he averred that he was at law entitled to have the patent for the land under the homestead laws of the United States; averred an utter failure of evidence on the part of the plaintiff in the land contest; set forth and charged facts which, if true, would have amounted to a fraud upon the rights of of the defendant; averred that the rulings of the land department against the defendant were made under a mistake and misapprehension of both the law and the facts of the case, and without any valid evidence and upon false and fraudulent statements of the plaintiff, and set forth facts charging that the land department had never acquired any jurisdiction over the defendant, had never made him a party to the proceedings in the land department, and that all the actions under the proceedings in the land department were illegal and absolutely void.

Upon the state of facts, as recited, the defendant declared the equitable title and right to the land to be in himself; that by the rulings in the land department, and upon the mistakes and frauds aforesaid, he could not be divested of his constitutional right to a hearing and determination in this court upon the questions of law affecting the same, and applicable to the facts stated in the answer.

The defendant averred that the plaintiff had come upon the land and taken possession of all except the 39 acres in question in the case, and throughout the last four years had been a tres passer upon and forcibly occupying all of the said land except said 39 acres.

Thereupon, a mandatory injunction was issued.

The plaintiff filed a joint demurrer and reply, demurring to the facts contained in the second and fourth paragraphs of the answer of the defendant, which averred acts of fraud and perjury, and that by these acts the plaintiff had procured the cancellation of the defendant's entry, upon the ground that these averments did not constitute a defense to the facts alleged in the petition of the plaintiff, and for an answer denied the facts set out in the third paragraph of the answer.

The court thereupon decreed that the defendant should be "restrained and enjoined from in any way interfering with the entire possession of the plaintiff to the land described," and "from residing upon, cultivating, pasturing, improving or occupying any portion of the land mentioned," and undertook to order that the defendant should be permitted, at any time within sixty days, to remove his buildings and improvements, and to provide that he "might be permited to reside upon said land for said period of sixty days," and "should have the right to use and occupy a tract of land not exceeding ten

acres immediately surrounding his house, and should only be permitted during said period of sixty days to enter upon the land of which he had been in possession for the purpose of removing, in a lawful and peaceable manner, his improvements thereupon."

A certified copy of a motion for a review in the general land office showing said motion had been finally overruled by the secretary of the interior was filed in the case as evidence in support of the petition, showing that the motion for review had been finally overruled, and that the entry made by the defendant had been canceled.

The plaintiff does not aver a patent from the United States. He makes out and stands upon an inchoate right to the land as based upon the final order made by the secretary of the interior.

Upon this state of facts appearing upon the pleadings, the court below having undertaken to give to the plaintiff possession of the 39 acres shown to be in complete possession of the defendant, was sustained by the opinion of the court here. In this conclusion I cannot concur.

I understand the case to be one in which the statutes of the territory afford a plain, adequate and sufficient relief at law, in which the defendant is entitled to a jury, and I understand that even in the absence of a special statute, the defendant would be entitled to a jury to try his right of possession by reason of that provision of the Organic Act, § 9, which provides, that:

"The district courts shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States."

And it is provided by art. 7 of the constitution of the United States that, in suits at common law, where the

value in controversy shall exceed $20, "the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

These provisions are limitations upon and prescribe the jurisdiction of the district courts of this territory, and the supreme court of this territory, and they prescribe the right of trial by jury in all cases which at the time of the enactment of the constitution of the United States were suits at common law.

It is, therefore, one of the guarantees of the constitution of the United States that "the right of trial by jury is preserved," that is, kept just as it was at the time of the enactment of that constitution, and it is my understanding that the right of possession of real estate is one which, at the time referred to, was never otherwise put at stake than in a court of law, in which either party was entitled to a trial by jury.

Among the authorities which are cited to the converse of the proposition, are High on Injunctions, § 360, and note, and Story's Equity Jurisprudence, vol. 2, § 959.

These authorities do not sustain the proposition contended for by the court, for while it it is stated in High on Injunctions, § 358, that if there is a "neglect to execute such decrees," it "will warrant a mandatory injunction to deliver possession," yet this proceeding will, according to the authority of this text writer, only be taken after "proceedings have been instituted to establish, in a court of equity, the title to real estate," and the authority upon which the passage is based, to-wit: A citation from *Garrettson v. Cole,* 1 Har. and J. 373, Md.,

that: "It is directed in certain cases by the aforesaid act of assembly," and that "after a title to land has been established by the adjudication of a court of equity." And in confirmation of the proposition taken by the court here, a further citation is made from the note to § 358, being an extract from Story's Eq. Juris. 2, § 959, to the effect that "a judicial writ or execution for possession of the property in controversy" will issue out of courts of equity to effectuate their own decrees.    So far, then, the authorities upon which the court reached its present conclusion go to the extent of declaring that "when courts of equity in pursuance of the aforesaid act of assembly," the character of which is not indicated, and "after the title to land has been established by the adjudication of a court," as, for example, in foreclosure proceedings, and having acquried jurisdiction under some other ground and for some other purpose, admitted as a necessary ground of equity jurisdiction, "it sometimes effectuates its own decrees," by writs for possession of the property in controversy.

No conclusion can be drawn from these authorities that a court of equity has ever taken the initiative solely for the purpose of delivering the possession of real estate from one in whom it has been complete for years, to another, who has had it not.    On the contrary, it is declared, in High on Injunctions, § 360, that "where the object of an injunction bill is merely to obtain possession of land upon which defendant has entered and committed trespasses and removed the products of the land, the relief will be denied, the remedy at law being ample and complete for the recovery of the premises."    (Citing *Pfeltz v. Pfeltz*, 14 Md. 376; *Schlecht's Appeal*, 60 Pa. St. 172; *Tomlinson v. Rubio*, 16 Cal. 202; *Tevis v. Ellis*, 25 Cal. 515).

In order to authenticate his position that writs of possession will sometimes be granted by courts of chancery, in order to "effectuate their decrees" Judge Story has referred to Eden on Injunctions, 4 John., ch. 17, pp. 363, 364 and 380, and to *Kershaw v. Thompson*, 4 John, ch. R. 612-618, and confirms the position by liberal citations from the views of Chancellor Kent in the 4th volume of the Commentaries, Lect. 58, p. 191-192, that: "Upon a decree for a sale (of mortgaged property) it is usual to insert a direction that the mortgagor deliver up possession to the purchaser." And Chancellor Kent further proceeds to remark that the "power of a court of equity to require delivery of possession by injunction" is founded upon the simple elementary principle, that the right "of a court to apply the remedy, is co-extensive with the jurisdiction of the subject matter."

And among the few authorities relied upon by him for this declaration of the doctrine are the cases of *Garrettson v. Cole*, and of *Kershaw v. Thompson*, in which Judge Story says, that the "whole of the leading authorities have been historically and critically examined."

The case of *Kershaw v. Thompson*, thus relied upon by both Chancellor Kent and Judge Story, was a case for the foreclosure of mortgage, and simply declared that upon "foreclosure of the equity of redemption and sale of the mortgaged premises," the court would order the possession to be delivered to the purchaser and not drive him to an action of ejectment of law, and said that it "might safely be laid down as a general rule that the power to apply the remedy is co-extensive with the jurisdiction over the subject matter," and that "a bill to foreclose the equity of redemption is a suit concerning the realty, and *in rem.;* and the power that can dispose of the fee, must

control the possession.    The parties to the suit are bound by the decree; their interests and rights are concluded by it, and it would be very unfit and unreasonable, that the defendant, whose right and title has been passed upon and foreclosed by the decree, should be able to retain the possession in despite of the court." A brief marginal statement of the case was that it was a bill to foreclose an equity of redemption of a mortgage and was a suit *in rem.* and that possession followed the decree and would be enforced by the court. The decree in the case was that of Chancellor Kent himself, and it supported no other doctrine than that when for some purpose a court of equity had properly attained control of real estate, as for example, in the foreclosure of a mortgage, that it would give the right of possession, in order to effectuate its own decrees; and neither of these authorities justifies the conclusion sought to be drawn from them that a court of equity may assume control of real estate for the purpose of delivering possession and as a primary object of the proceedings.

It is again said, however, by the court here, upon the authority of Spelling's Extraordinary Relief, vol. 1, § 370, that the rule is announced by that author, as follows:

"But it is a general principle that the legal remedy which warrants the refusal of relief by injunction must be plain and adequate; in other words, as practical and efficient for attaining the ends of justice and its prompt administration as that of equity."

And that in the same section the author says, "the test of equitable jurisdiction in the application of this principle to a particular case usually depends greatly upon the character of the case as disclosed in the proceedings."

The author thereupon cites a large number of authorities. I have examined all, and in not one of them does the court undertake to hold, as an original proposition or motive of equitable proceeding, to transfer the possession to real estate. Nor do they go further, when rights in relation to real estate has been the subject of decision, than to declare that the court will not even interfere to prevent a mere trespass, unless the complainant has been in the previous undisturbed possession ef the property.

But the same author does, under a claim of right, in § 369 of his work, next preceding the section cited as authority by the court here, state, that "a preliminary injunction should not be granted to restrain" even "a trespass which can be compensated in damages, even if it should appear that the defendants are irresponsible unless there be some pressing injury or danger in the delay. And the complainant should show clearly the absence of an adequate remedy at law."

And the author, for his authority, says in a note that: "This rule was expounded by Chancellor Kent, with his usual ability, in *Stevens* v. *Beekman*, 1 John, ch. 318, where he said: 'This is a case of ordinary trespass upon land, and cutting down the timber. The plaintiff is in possession and has an adequate and complete remedy, at law. This is not a case of the usual application of jurisdiction by injunction, and if the precedent were once set, it would lead to a revolution in practice; for trespasses of this kind are daily and hourly occurring. I doubt exceedingly whether this entension of the ordinary jurisdiction of the court will be productive of public convenience.'"

The chancellor concluded that: "There is nothing in this case so special and particular as to call for this

particular relief, and especially, when I am not justified any established by practice and precedent."

The case of *Watson v. Sutherland*, 5 Wall. 74, cited as authority, was a case in which the plaintiff was threatened with loss of trade, destruction of his credit and failure of his business prospects, and the consequences of an execution, if levied upon his entire stock in trade upon a judgment against another person, and his application was based upon the imminent ruin of his business, and the destruction of his future prospects, if the immediate intervention of the court was not given, and in that case Mr. Justice Davis most properly gave the relief and made the statement cited by the court, that: "A particular case must depend altogether upon the character of a case as disclosed by the pleadings.

The case of *Boyce's Executor v. Grundy*, 3 Pet. 210, also relied upon by the court, was a case where a bill in chancery was filed in the circuit court of West Tennessee, by Felix Grundy, against the appellants, the executioners of Boyce, to enjoin a judgment at law and to rescind a contract. The case had nothing to do with the possession of real estate.

The case of *English v. Smock*, 34 Ind. 115, cited by the court here, was an injunction to restrain the issuing of county bonds.

Neither of these cases thus cited by the court, as fortifying its position, has any reference to the possession of real estate, and furnishes to us no guide whereby we may be directed, as Chancellor Kent made it his rule to be, "by established practice and precedent."

In support of its position the court has further cited the case of *Wood v. Murray*, 85 Iowa, 585, 56 N. E. 356. The case was one in which the defendant entered, as a

homesteader, certain land in possession of the widow and children of the decedent who had filed his declaratory statement under the pre-emption law, and the question of title was pending before the secretary of the interior.

The plaintiff had been in quiet, peaceable and actual possession of the land for two years. Her continuous and actual possession of the land was undisputed, and the court granted a temporary injunction "restraining the defendant from cultivating said land, or in any manner interfering with the peaceable possession of the plaintiff in the same" and said that the question was, "under the facts and circumstances, simply whether the defendant should be restrained from interfering with the plaintiff's possession pending the determination of her rights by the secretary of the interior." The injunction was granted by the court, as it was declared, "simply to maintain the parties *in statu quo* until their rights are determined by the proper tribunal." The order granted by the court went no further than to restrain the defendant from continuing certain acts of trespass. The case was not one asserting the original jurisdiction of a court of equity to take the possession of land from one person and give it to another.

Again the court cites *Lee et al. v. Watson*, [Mont]. 38 Pac. Rep. 1077. The case was one brought to restrain interference with the possession of land, in which the petition averred that the defendant had been guilty of repeated trespasses; that the plaintiff was the owner and in possession of the land in question. Those averments were not controverted, and the conclusion of the court goes no further than that "the plaintiff, being the legal owner of the land and in possession, either actual or constructive, that this showing was sufficient as against

mere trespassers, that is, as against those who do not show some right of possession." (Citing *Gonzales v. Ross*, 120 U. S. 605).

In the case of *Jackson v. Jackson*, [Ore]. 19 Pac. Rep. 847, also cited in the opinion of the court as a precedent, it appeared upon petition for injunction that the plaintiff had been in quiet possession of the land in question for two years, complying with all the requirements of the laws of the United States in doing all necessary acts of residence and cultivation up to the 8th of February, 1888, at which time the defendant unlawfully and wrongfully took possession of the premises and had driven and forcibly resisted the plaintiff from taking possession thereof. The court said that "the case was one which required a speedy and summary remedy," otherwise the plaintiff would necessarily lose the benefit of his preemption right to the premises, and that, therefore, the court held that he is entitled to the possession of the premises for the purpose of performing those acts required to be done by the pre-emption laws; and that no other person has a right to enter the land or to interfere with his occupancy thereof, so long as his entry remains uncanceled. The ground of the injunction was that the plaintiff's right might not be jeopardized to prevent his "title thereto under the laws of the United state."

These cases do not support the position of this court that a plaintiff having been for four years in the actual, peaceable and complete possession of 120 acres of the land of a homestead, and having had the final award in the land department made to him of the whole homestead as far as the jurisdiction of the land department was concerned, and his rights not being jeopardized by having

no established residence upon the land, would grant an injunction and deprive a contestant of his similar peaceable and complete possession of the remaining 40 acres of said tract of land, and that a court of equity has power to interfere for the purpose of transferring the possession of land at such a juncture, and under such circumstances, as a general proposition.

And it certainly does not sustain the contention of this case, that an order of the chancellor in an adequate and constitutional substitute for a trial by jury, that the plaintiff has obtained his award in the land department by the instrumentality of fraud, mistake and perjury, which are specifically alleged and admitted by the demurrer for all the purposes of this case, and to its whole extent upon the pleadings.

And the cases cited and relied upon by the court thus, furnish no warrant or authority for the step which it has here concluded to take. Nor, so far as I have been able to discover, can any "established practice or precedent" for this course be found. On the contrary, I believe the rule to have been universally held, not only prior to the fourth day of July, 1776, and prior to the time of the enactment of the constitution of the United States, but also since that time, in both the English courts and the supreme court of the United States, as well as the most respectable courts of this country, to regard the recovery of the possession of land as an original motive of proceeding, to belong to the domain of law, and when the defendant is found in the peaceable possession of a specific tract of land, courts of chancery have heretofore uniformly refused to assume jurisdiction for the purpose of putting one party out of possession and another into possession, without the right of trial by jury, and that

such a construction of general maxims as are quoted in the opinion of the court is aside from their true meaning and intent.

On the contrary the equity jurisdiction has been uniformly refused when applied for to recover the possession of real estate.

It was said in *Blacken et al. v. Preston et al.* 1 Wis. 584, that: "Courts of equity will rarely and only under peculiar circumstances entertain jurisdiction" even "in cases of tort." And that when it does, "an injunction will be granted to restrain trespasses in order to quiet the possession, or when there is danger of irreparable mischief, or where the value of the inheritance is put in jeopardy by a continuance of the mischief, or where the courts of law cannot give a complete remedy," and that in order to justify the interference of a court of equity, even to restrain trespasses, the complainant must in general be in possession of, or have established his right at law, to bring an action to recover possession, and the court will act in such cases with great caution, and they will not afford relief even to restrain the commission of tortious acts, when the complainant is out of possession. And it was declared, that "the plaintiff's exclusive right must be admitted by the defendant or established by law, to warrant an interference of a court of chancery," and that it will then only be issued in aid of a decree in chancery, in putting a purchaser into possession, and is followed by a writ of assistance, for authority, upon the authorities cited above Eden on Inj. 261, Story's Equity, 226-227, and *Kershaw v. Thompson*, 4 Johns. Chan. 609, and then declared that "the injunction would never be granted in a case like the one now under consideration," which was an application for injunction to restrain

the defendant from digging mineral on the land, pending an action of forcible entry and detainer, it appearing that the defendants were in possession under a claim of right.

And the declaration is expressly made that "if an appeal should be made for the possession of land, which is commonly called an ejectmen bill, *it would be demurrable, for the proper redress is at law."*

The case of *Tomlinson v. Rubio*, 16 Cal. 203, was upon an application to restrain the defendants from taking possession of certain real estate in which the plaintiffs averred title and possession to be in themselves, and that if the court did not grant the injunction, and if the defendants were permitted to take the possession which was sought to be restrained, that the plaintiffs would be ruined in their business and their property would be destroyed, and it was held upon that state of facts, that these allegations were sufficient to authorize an injunction, there being no averment of insolvency of the defendants and the complaint not showing that there is no adequate remedy at law, the court declaring that in such cases forcible entry and detainer would be a speedy mode of regaining possession, if taken by the defendant, and for other damages the usual proceedings at law would suffice.

In *Ross et al. v. Hobson et al.*, supreme court of Indiana, 26 N. E. Rep. 775, in an action to rescind the sale of land, the defendant, by a cross-complaint, sought to recover possession of the land and to quiet his title thereto, and declared that the issues should be tried by the court. The application was refused "since the issues in the cross-action were clearly triable by a jury as a matter of right, upon the request of either party."

*Martin v. Martin et al.*, 20 N. E. Rep. 763, was a case in the supreme court of Indiana, decided April 6, 1889, in which the relief sought was the possession of real estate. The court declared that "Whenever the cause of action is one that can only be enforced by invoking the equitable powers of the court, then the right of trial by jury does not obtain; but, if the cause of action does not depend on the equity jurisdiction of the court, then a jury trial may be demanded."

In *Tevis v. Ellis*, 25 Cal. 515, the plaintiff was in actual possession of land, and sought equitable relief for the protection of that possession, but it was refused, the court saying that "the remedy at law would be speedy, adequate and complete."

And in *Donahue v. Mester*, [Cal.] 25 Pac. Rep. 1096, the supreme court of California declared that under the constitution of that state which provided, "that the right of trial by jury shall be secured to all and remain inviolate, defendant, in an action to quiet title under the code of civil procedure of California, § 738, is entitled to jury trial on the issues of prior possession and ouster, when his verified answer shows that shortly before the commencement of the action he was rightfully in possession, and was ousted by the plaintiff and wrongfully kept out of possession by him." 'The court declared that, "it is quite clear that the legislature, by the mere device of adding new cases to those of a class to which former equitable remedies were applicable, cannot encroach upon that provision of the state constitution which says that the right of trial by jury shall be secured to all, and remain inviolate." And the court goes on to say that under the laws of that state, if a decree is to deal "with ordinary common law rights clearly cognizable in courts at law, it is to that extent an action at law; that the

proper course to be pursued in such a case is clearly pointed out by Judge Field in *Curtis v. Sutter,* 15 Cal. 252, and that the legislature attempted in several different acts to avoid the right of trial by jury by providing new proceedings in equity for the determination of issues which parties clearly had the right to have determined by courts of law and juries; and in every instance the court held, either that the act was unconstitutional, or that it should be so construed as not to cut off the right of trial by jury. In one of those cases the court, commenting on the attempt above stated, says: 'If this could be done, there is not an ejectment in the common law courts which, by the inversion of parties, could not be brought into a court of equity.' (*Haines' Appeal,* 73 Pa. St. 172). In another case the court, speaking of the provisions of the constitution, says: 'It cannot mean that the legislature conferred upon the supreme court and the courts of chancery, any question which has always been triable according to the course of law by a jury.' (*Norris' Appeal,* 64 Pa. St. 281). In another case the court says that: 'An act of the assembly transferring any part of the jurisdiction of the common law courts to a court of chancery, would be unconstitutional.' (*Tillmes v. Marsh,* 67 Pa. St. 508). The limits of this opinion will not allow more extended quotations from other cases, but the point will be found to be fully disscussed and pointedly decided in *Coal Co. v. Snowden,* 42 Pa. St. 488; *Norris' Appeal,* 64 Pa. St. 275; *Haines' Appeal,* 73 Pa. St. 169; and *Tillmes v. Marsh,* 67 Pa. St. 507."

The *North Pennsylvania Coal Company v. Snowden,* 42 Pa. St. 488, was upon a bill in equity to obtain the enjoyment of mining rights and privileges upon the land described in the bill. The supreme court of that state by Strong, J., afterwards of the supreme court of the United

States, said that the bill was what "is sometimes called an ejectment bill, and is demurrable" and "charges nothing to give the court equity jurisdiction.   *   *   It has never been held that equity courts have jurisdiction of actions, founded on legal title, brought by one tenant in common against an alleged co-tenant, to obtain possession or enjoyment of land," and that there is "and always has been, a class of cases which are exclusively cognizable in courts of law, and over which courts of equity have no jurisdiction, is not to be doubted, and we think the complainant's is one of them." And that "trial, according to the course of a court of chancery, then, is trial by a single judge," and that, "if there is any right to which, more than others, the people of Pennsylvania have clung with unrelaxing grasp, it is that of trial by jury. They brought it with them from the land of their fathers. In every constitution which has ·been adopted, they have taken care to secure against infringement, and put it beyond the power of either executive, the legislature, or the courts to take it away from any individual." The constitutton of that state provided, that, "Trial by jury shall be, as heretofore, and the right thereof remain inviolate." "What can this mean, but that the right of having controverted questions of fact in common law cases decided by a jury, should be beyond the reach of any department of the government, whether it be the legislative, the executive or the judiciary? This was the right which had always been enjoyed before, and if the constitutional provisions were not intended to pro- tect that in all its length and breadth, they can mean nothing."

The learned judge said that the legislature of the state had no power to modify this provision of the consitution by enactment which should undertake to relieve in equity in

such cases as that in question.  But that "any question which has always been triable according to the course of law - by a jury," should still be so tried.  And he said further that if it were held otherwise, then an "ejectment founded solely on legal title, an action of debt on bond, or a replevin, or an action of trespass, may be sent into chancery, all contested facts in it be decided by the judge, and the intervention of a jury be unknown.  *   * Were it admitted that the legislature could authoritively convert a legal right into an equitable one, a court of equity could not, as such, enforce it.  The judiciary, no more than the legislature, can deny to any litigant the right of trial by jury, in a case appropriate to such a mode of trial."

The rule and position of the court in that case was readopted in *Norris' Appeal*, 64 Pa. St. 275, by Sharswood, J., upon the same line of reasoning, concluding with the declaration, that:  "A court of equity, as has been said, may do great things, but not all things."

And the following year in *Tillmes v. Marsh*, 67 Pa. St. 508, the supreme court of that state, by Sharswood, J., again reaffirmed the exclusive jurisdiction of a court of law over questions touching the possession of real estate and the right of trial by jury therein, declaring that a bill which was similar to the petition for mandatory injunction in this case, that, "It certainly does not require any elaboration to prove that this is a mere ejectment bill, and might have been demurred to as such." (Citing 2 Danl. Chan. Pr. 29).

And in *Loker v. Rolle*, 3 Ves. 4, a bill in many respects similar to this, Lord Rosslyn, said:  "Upon the face of a bill it is quite clear the plaintiff may draw a declaration in ejectment.  The bill states the title, and

that by some means or other the same persons are in possession of all the lands, and have confounded the boundaries.  *   *   If he had filed a bill for discovery only, he must have prayed for the discovery; but it goes on to pray relief; that is merely an ejectment."

The case of *Newman v. Duain*, 27 Pac. Rep. 66, in the supreme court of California, was an action for the possession of land, and it was declared under that section of the code of civil procedure of California, which provides, that the right of a jury trial shall be preserved, "that in actions for the recovery of specific real or personal property, and plaintiff cannot deprive him of this right by framing his complaint so as to make the action an equity case, under the code of civil procedure of California, No. 738, providing that an action may be brought by any person against another who claims an interest or estate in real property adverse to him, for the purpose of determing such adverse claims."   And the court said, that, "assuming that said section contemplates a case where the plaintiff is out of possession and the defendant in possession, still it is evident that the plaintiff herein, by simply framing his complaint in a particular way, could not deprive the defendant of a jury trial of the issues raised by his answer."

And in the case of *Bodwell v. Crawford*, 26 Kan. 292, cited in the dissenting opinion of *Woodruff v. Wallace*, 3 Okla 355, in which the remedy under discussion, was sought for, to recover the possession of premises conceded to be the property of the plaintiff, from the defendant, who was in possession without any authority from the owner, under the pretended lease by an unauthorized agent, it was declared that, "the owner's remedy was an action at law to recover possession, and he may not resort

to equity and obtain an injunction, and thus take away the constitutional right of a trial by jury," and the court says that, "in all such cases of the unauthorized taking possession of real estate, the ordinary remedy is an action at law for the recovery of possession. Under such circumstances the owner may maintain forcible entry and detainer, and in all he may maintain an ejectment. Both are actions at law. Has he the further remedy of injunction? Counsel for plaintiff concede that this is a case of first impression, and that a careful examination of the authorities discloses no precedent for such an action." And the judge, Brewer, who wrote the opinion, now on the supreme bench of the United States, then declared that: "No one will contend that a mere unlawful possession gives occasion for the interference of a court of equity. * * The legislature has not the power, even if it should attempt it, to deprive a party of this right of trial by jury, by simply changing the form of the action; for if it could, in respect to the recovery of real estate, it could in respect to any other common law action, and so simply legislating as to forms, set at naught the constitutional guaranty." And that distinguished jurist concludes that: "Counsel, conceding that there is no precedent to sustain this action, intimate that this court should establish one; but it is the duty of courts to stand by the ancient land marks, to walk *super antiquas vias*. Additional remedies must be established by other bodies and in other ways.

In the case of the *Church of Christ of Independence, Mo. et al. v. The Reorganized Church of Jesus Christ of Latter Day Saints*, decided by the United States circuit court of appeals, at St. Louis, 70 Fed. Rep. 179, Judge Thayer declared, that:

"A complainant who has only the equitable title to land, cannot maintain a suit in chancery to recover possession from an adverse occupant, and that this could only be done where the party having the superior equity seeks, as against the person holding the legal title, to make him the trustee."

And it has been recently held by the supreme court of Kentucky in *Hilman v. Hurley*, 82 Ky. 626, that:

"One seeking an injunction against trespassers on land must be in actual possession as well as entitled to possession."

In the case of *Killian v. Ebbinghaus*, 110 U. S. S. C. p. 246, in which the appellee sought to obtain possession of real estate by a bill of chancery, it was said in the opinion of the court, that the "fatal objection to the suit is that it is if fact an attempt by the party claiming the legal title to use a bill in equity in the nature of a bill of interpleader as an action in ejectment." And declared upon the authority of the leading case of *Hipp v. Babin*, 19 How. 271, "That, whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right of a trial by a jury.

And in *Towne and Grandchute v. Winegar*, 15 Wall. 373, it was again declared upon the authority of *Hipp v. Babin*, that "the result of the argument is, that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate and complete remedy without the aid of the court of equity the plaintiff must proceed at law," because the defendant "has a constitutional right of a trial by jury." That "right of trial by jury is a

great constitutional right, and it is only in exceptional cases and for specified causes that a party may be deprived of it." It is in vindication of this great principle, and as declaratory of the common law, that the judiciary act of 1789, in its one hundred and sixty-first section, declares that suits in equity shall not be sustained in either of the courts of the United States in any case where an adequate and complete remedy may be had at law." (1 Stat. at Large, p. 82).

*Fussell v. Gregg*, 113 U. S. 550, was a case in which the bill of complaint alleged that the complaint had an equitable estate in fee in the premises in dispute, and that the defendants were in possession without title, in other words, were naked trespassers, and prayed that they might be turned out, and that complainant, who had the only equitable title, might be put in possession.

In passing upon the case the court said, that: "To give a court of equity, jurisdiction, the nature of the relief asked must be equitable, when the suit is based on an equitable title. The plaintiff does not allege that the defendants, who are in possession of the premises, have the legal title or that they obtained possession under any person who had it; nor does she state any facts which connect them with her equity; that being mere naked trespassers in possession, they might be turned out of, and she, who has only an equitable titled, may be put into possession. The relief prayed for is such as a court of law is competent to grant, if the plaintiff's title would justify it. But the plaintiff does not seek by her bill to better her title. If all the relief asked for were granted, she would still have an equitable title only. The case is, therefore, an ejectment bill, brought on an equitable title."

The court then went on to cite the case of *Galt v. Galloway*, 4 Pet. 332, in which it was said, that: "These occupants can be considered in no other light by the court than intruders, and the remedy against them is at law and not in chancery. No decree could be made against them unless it be that they should deliver possession of the premises; and to obtain this, the action of ejectment is the appropriate remedy."

The court in *Fussell v. Gregg* then went on to say: "This decision is in point and shows the bill to be without equity as to those of the defendants who are in possession. Their possession is good against all the world, except the true owner. As the bill asserts no equity against them, they have the right to stand on their possession until compelled to yield to the true title and to demand a trial by jury of the question whether the plaintiff has the true title. The plaintiff cannot deprive them of that right by neglecting to acquire the legal title, and upon the ground of her equitable title, ask the aid of a court of equity. She can turn the defendants out of possession only upon the strength of the legal title, which she must first acquire. Having done this, a court of law is the proper forum in which to bring her suit. (*Hipp v. Babin*, 19 How. 271, 60 U. S. 15, 633; *Parker v. Mfg. Co.* 2 Black 545, 67 U. S. 17, 333; *Grandchute v. Winegar*, 15 Wall. 373, 82 U. S. 21, 174; *Lewis v. Cocks*, 23 Wall. 466, 90 U. S. 23, 70; *Killian v. Ebbinghaus*, [*ante*], 246)."

It would be supposed, after this decision, that a demand would not be made, to substitute a writ proceeding alone from the power of the chancellor, in lieu of a procedure at law in which the complainant, having an equitable title, would not be given the possession of land,

and that, if such a demand were made, that it would be acceded to by this court.

But it is further contended by the court, that: "The legal status of the parties has been determined, and the contestant who remains upon the land after his rights have been finally and adversely passed upon is there without color of right and as a mere naked trespasser." That is, that upon the case set up in the answer, there is no question of fact for a decision of the jury, and that, if all the facts contained therein were presented in the trial in a court of law it would still be the duty of the court to instruct the jury that the defendant had no case, and that his interest in law was extinguished, and that, therefore, there is no reason why this court, sitting as a court of equity, should not administer the remedy.     The argument is fallacious.     The defendant in his answer averred that this court had no jurisdiction as a court of equity, and he demanded his legal right, and even if there were no evidence he is still entitled to have his case heard in a court of law and tried to a jury.     (*Haines' Appeal*, 73 Pa. St. 172, Sharswood, J.).

But this is not the case here.     So, for such instruction as may be derived from the authorities of courts which appear not to have been directed by express and definite provisions of the statute.     But no doubt whatever is left in this territory as to the law upon this subject since it is provided in the code of civil procedure, § 4156, p. 809, of the Statutes of 1893, that:

"Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury unless a jury trial be waived."

And the forum in which the trial shall be had is fully provided for in art. 13, § 4805, p. 919. of the code of civil

procedure before justices of the peace, in which it is provided that:

"Any justice, within his proper county, shall have power to inquire, in the manner hereinafter directed, as well against those who make unlawful and forcible entry into lands and tenements, and detain the same, as against those who, having a lawful and peaceable entry into lands or tenements, unlawfully and by force hold the same, and if it be found, upon such inqury, that an unlawful and forcible entry has been made, and that the same lands and tenements are held by force, or that the same, after a lawful entry, are held unlawfully, then said justice shall cause the party complaining to have restitution thereof."

. And § 4806:

"Proceedings under this article may be had in all cases    *    *    where the defendant is a settler or occupier of lands and tenements, without color of title, and to which the complainant has the right of possession."

And when, or before, the land department has finally passed upon the rights of the entryman and settler and contestant in this territory and has determined to whom that title is due, and it is found that the possession, or a part of it, is in the other, the losing party, and the matter of possession must be determined not by the land department but by the courts of the territory, the legislature has incorporated the doctrine of the common law, as hereinbefore set forth, into precise and unmistakable provisions, by which that possession shall be determined. The instant the jurisdiction of the courts of the territory attaches, that instant the remedy provided by the statute of the territory attaches also, and when it is declared by the opinion of the court, "that the courts of this territory are the courts of chancery to which litigants for public lands may come for relief after they have established

their title in the tribunals of the law," it begs the question and assumes a jurisdiction that is without authority and in defiance of a jurisdiction and remedy provided by the statute. It is an attempt to assume an authority to the chancellor which is expressly provided by the statutes of the territory to be given to a jury, and when it is further said by the court that the land department, which in the opinion of the court is called the "law tribunal," not having the jurisdiction to give possession, "and the courts of the territory possessing it, what objection can be reasonably urged against granting immediate relief," the court makes no advance in the argument, and but reaffirms an opinion not based upon estsblished practice and precedent, and which is in defiance to the statutes of the territory.

The court here also relies upon the precedent cases decided and passed upon in this court of *Sproat v. Durland*, 2 Okla. 24, of *Reeves v. Oliver*, 3 Okla. 62, and *Woodruff v. Wallace*, 3 Okla. 355. In my judgment, the able dissenting opinion filed in *Sproat v. Durland* should have been adopted as the opinion of the court. In *Reeves v. Oliver*, no reason, in addition to those given in *Sproat v. Durland* was given by the court for the foundation of its judgment other than that of the supreme court of the United States, in *Marquez v. Frisbie*, 473, by Justice Miller, in which it is said, that: "We do not deny the right of courts to deal with the possession of the land prior to the issue of patent, or to enforce the contracts between the parties concerning the land," and this concession or admission of jurisdiction by the supreme court of the United States in favor of the right of the courts to deal with the possession of land, while contention as to the title existed in the land department,

was construed by the court, not in express terms, but inferentially, to concede the power of the chancellor in an equitable proceeding of the present character, against the former precedent and practice which provided that the trial by jury should be a constitutional right, and against the provisions of the statutes hereinbefore recited by which the jurisdiction thus plainly prescribed by the supreme court of the United States, was assumed to the chancellor, to whom it had been, by the general course of the common law, by the constitutional guarantees, by the statutory provisions and by the uniform judgments of the courts, prohibited.

In *Woodruff v. Wallace,* I joined in the then reiterated dissent of Justice Bierer to this doctrine, which then had the affirmation of the supreme court by virtue of the approval of two of its judges, in as much as under the enactment of congress constituting the supreme court here, two of the judges are sufficient to constitute the court in affirming a judgment, while two of the judges dissented therefrom, the court in fact standing equally divided, and in the case now under discussion, but two of the judges fully concurred in the opinion of the court, this being an affirmation, while another declared that he had not had time "to fully consider and investigate the principle involved," and because "the conclusion has been for some time the rule of decision in this territory;" while a fourth, Justice Bierer, concurred because "it has now become the law of this jurisdiction" and "must be understood to be an acquiescence in the law as established by the decisions of the court," and that he still disagrees, and does not assent to the principles upon which the decisions were based.

I wholly and absolutely dissented from the doctrine of

mandatory injunction, in confirmation of which dissent, my views are here more fully expressed.    While I regret to differ upon so important a proposition from the supreme court of the territory, yet I am consoled by finding myself, as I believe, in company with the great masters in the law, with Justices Story and Kent, Justices Strong, Sharswood and Brewer, and with the great judges of the common law in England, and their successors in the various supreme courts of this country, and with the supreme court of the United States, in holding that upon all questions involving the possession of real estate, the constitutional right of the citizen is, not to a single judge, but to a trial by a court of law with a jury; that while, if jurisdiction be once obtained upon equitable grounds, as for instance, to foreclose a mortgage, a court of equity may "effectuate its decrees" by giving possession, yet equity may not, as a motive of original proceeding, undertake to control or transfer possession; that a court of equity will no farther interfere with the possession of land than to afford relief to one having the legal title and the actual possession against trespassers; that no other supreme court has determined that one in actual, full, peaceable possession of land to be a trespasser so that that possession may be destroyed by an order made by a single judge in an equitable proceeding; that the legal method provided by statute is as "plain, adequate, complete" method, and as far as courts have hitherto spoken on the point, "as speedy" as the remedy sought to be applied; that to adopt any other course would amount to a revolution in practice, by which a single judge would be empowered to assume jurisdiction when, in his individual opinion, the legal remedy was not sufficient, and that a claim to the possession of real estate can be no more converted into an equitable proceeding in which

30—v.

the defendant can be deprived of a jury than can an action of debt on bond, an action in replevin, or an action of trespass, and either one of them would be a step toward the destruction of the right of trial by jury which neither the executive nor the legislative branches of our government, nor the courts, have any right to take; that it is not justified by any established practice "or precedent" such as Chancellor Kent required in order to sanction such a step, nor is it "*super antiquas vias,*" as the law should, in the spirit of Judge Brewer, be interpreted; that the authorities cited as a basis of the conclusion of the court are not opposite, since they do not relate to the possession of the land, and the two or three which appear to relate to the question no more proximately apply than to declare that injunction will sometimes be granted to restrain acts of trespass, in behalf of one actually in possession, in cases where some specific ground of equity jurisdiction exists; that on the contrary the jurisdiction here sought to be established did not exist at the time of the adoption of the constitution of the United States; that since that time it is forbidden in this territory under that provision of the Organic Act which "preserves the right of trial by jury inviolate;" that a similar interpretation upon similar guarantees has been made by the supreme courts of Wisconsin, California, Indiana, Pennsylvania, Kansas, and all others which have had occasion to treat of the matter, as well as time and again by the supreme court of the United States, whose decisions are of conclusive force in this territory, in the absence of express statutory enactment; that the policy of the present interpretation declared by the federal statute which contains the enactment, that suits in equity shall not be sustained in either of the courts of the United States "in any case where there is an

adequate and complete remedy at law;" that, finally, the jurisdiction assumed by the court is prohibited by the territorial statute itself, which declares that: "Issues of fact for the recovery of     *     *     specific real or personal property, shall be tried by a jury unless a jury trial be waived;" that a specific method is further provided by the forcibly entry and detainer act by which the trial by jury may be had, "where the defendant is a settler or occupier of lands and tenements, without color of title and to which the complainant has the right of possession," and that as the legislature has not the power, so neither have the courts the power to convert a legal right into an equitable one; that when the courts of this territory come to pass upon questions involving the possession of real estate, the mode of procedure is not a question of construction for the courts; they must pursue the method provided by the statute; and I, therefore, believe that I act in conformity with the invariable rule and practice of the common law as preserved by the constitution of the United States; with the invariable rule and practice of the supreme court of the United States and of the several states of the Union, and in obedience to the precise directions of the statute, in declaring that the recovery of the possession of real estate being involved, the defendant has a right to a trial in a court of law by a jury; that the district judges of this territory have neither power nor authority by established precedent or practice by the common law, or under the statute, to assume such a jurisdiction.