E. F. Black v. Walter P. Jackson.
(Filed February 12, 1898.).

Injunction—*Homesteads—When Granted.* Where adverse claimants are residing upon a tract of land and each claiming the same as a homestead by virtue of priority of settlement, and the land department makes a final award thereof, the losing party cannot properly claim the right to continue his residence upon the land for the purpose of bringing a suit in equity to declare a trust against his successful adversary, when he has already resided upon the land a sufficient length of time, under the law, to enable him to make final proof for the land.
(Syllabus by the Court.)

*Error from the District Court of Kay County; before A. G. C. Bierer, District Judge.*

*S. H. Harris* and *J. C. Mechling,* for appellant.

*Howe & Guthrie,* for appellee.

Opinion of the court by

Dale, C. J.: This case comes here from Kay county to reverse the ruling of the lower court upon a demurrer. It appears from the record before us that Walter P. Jackson filed a petition in the district court for an injunction, prohibitive and mandatory, against E. F. Black, praying that Black be prohibited from further trespassing on or

interfering with his possession of the southwest quarter of section 26, township 28, range 2, E., land situated in Kay county, and further asking that Black be required to remove from said land. Jackson alleged that he had a homestead filing upon the tract of land above described.

To this petition Black answered by stating, in substance, that he had resided upon the tract of land since about September 16, 1893, at which date he settled upon and claimed the land as his homestead; that he filed a homestead entry therefor on October 31, 1893; that in a contest in the local land office and interior department, it had been finally determined that Jackson settled upon the tract in dispute prior in point of time, to his, Black's, settlement, and for that reason alone, his homestead filing was cancelled and Jackson awarded the right to file upon the land; that during his residence upon the tract in dispute, he, Black, had made improvements thereon to the value of $500; that he is, in all respects, qualified, under the laws of congress, to acquire a homestead; that Jackson is not qualified to obtain title to the land as a homestead for the reason that he entered upon the land in violation of sec. 10, of the act of congress approved March 3, 1893; that at the hearing of the case in the local land office it was conclusively shown and admitted by Jackson that he, Jackson, on September 16, 1893, the day upon which the Cherokee Outlet was opened to settlement, started upon the race for lands from the south line of the Chillocco reservation, such place of starting being three and one-half miles south of the north boundary line of the Cherokee Outlet. And it is claimed by Black that the fact so proved and admitted forever disqualified Jackson from acquiring any right to the land by reason of the

prohibition contained in sec. 10, *supra*. It is further alleged that the only questions involved in the land contest were those of prior settlement and the qualification of Jackson to make a homestead entry, and, notwithstanding Jackson's proved and admitted disqualification, the local land office, the commissioner of the general land office, and secretary of the interior, decided in favor of Jackson upon both the questions of priority of settlement and the qualifications of Jackson to file a homestead entry for the land. That upon the latter proposition the land department misapplied the law, and by reason of such mistake, alone, awarded the land to Jackson, and cancelled Black's entry; that he, Black, is entitled to the land under the law, and is desirous of bringing action in the proper court to have Jackson declared his trustee, but until Jackson shall have made his final proof for the land and the government has parted with its title, the courts have no jurisdiction of that character of a case. That, if he is removed from the land Jackson will sell his homestead right to another, thereby depriving Black of his right to bring the action in the courts; that he is only desirous of retaining possession of about five acres of the land, occupied by his dwelling and improvements made, surrounding the same, until such time as Jackson shall make final proof, and avers his willingness to give sufficient bond to indemnify Jackson against any loss which may occur by reason of his occupancy of such tract of land. He further claims that the land is worth $6,000, and that if he is removed, Jackson will sell and relinquish his claim, and the same will be entered by some person who is qualified under the law to take a homestead

—48

A demurrer was interposed to the answer and sustained, and by its judgment Black was enjoined from further entering upon the land except for the purpose of removing his improvements. The only question for our determination in this case is whether or not the answer of Black sets up such a defense as will justify the court in refusing injunction as prayed.

This court has held in *Woodruff v. Wallace*, 3 Oklahoma, 355, that:

"District courts of this Territory have jurisdiction to inquire into the right of possession as between settlers upon public lands, and where it appears that the rights of adverse claimants have been adjudicated by the land department, and the homestead entry of one of the parties cancelled, the district court may, by injunction, give exclusive possession to the person who was successful in the contest proceedings."

In that case, however, all of the matters in dispute between the parties were questions of fact, and the facts as found by the land department are binding upon the courts. (*Johnson v. Towsley*, 13 Wall. U. S. 72; *Lee v. Johnson,* 116 U. S. 48.)

In this case upon the question of prior settlement, the finding by the land department in favor of Jackson is conclusive upon the courts. But it does not follow that the courts will also be governed upon questions of law as announced by the land department. On the contrary, the courts do have jurisdiction to correct mistakes of law, if any occur, and award the land to the party, who may, under the laws of congress, be entitled thereto. (*Johnson v. Towsley, supra.*)

But this jurisdiction never obtains in the courts until after the title to the land has passed from the United

States and the question becomes one of private rights. It therefore follows that the courts cannot now interfere to compel the land department to reinstate Black's homestead filing, or in any manner to interfere with the intention of the land department, to permit Jackson to make final entry for the disputed tract and to receive a patent therefor.

In the case under consideration it is alleged in the answer of Black that Jackson can never acquire a legal title to the tract of land in dispute by reason of having entered the Cherokee Outlet in violation of the act of congress and the president's proclamation in opening the land to settlement, and that if he, Black, is removed from the land, Jackson will sell or relinquish his right to the claim to some person who is qualified to enter the land, and thereby prevent Black from ever asserting his claim in the courts; that if he is permitted to retain a small portion of the land, any person purchasing will take the land with notice of his claim, etc.

From an examination of the practice of the land tribunal, we find no provision for a *lis pendens* notice, and no rule whereby notice of an adverse claim might be effectual to guard against the threatened danger, and if we were of the opinion that the only way by which Black could protect his rights would be by remaining upon the land until Jackson receives a patent therefor, we would hesitate somewhat about affirming the judgment of the lower court, unless, after a careful review of the legal question involved, we reached the conclusion that Jackson's qualifications to enter were beyond reasonable dispute. But we cannot agree with the contention of counsel that the removal of Black will jeopardize his rights

in the land. It is alleged in the answer of Black that he settled upon the land about September 16, 1893, and that he has resided thereon continuously since that date, and has valuable improvements upon the land. Under the law opening the Cherokee Outlet to settlement,( sec 19, p. 336, vol. 28 U. S. Stats. at Large,) the right to make final proof for lands in the Cherokee Outlet is extended to all *bona fide* settlers upon lands at the expiration of fourteen months from the date of their settlement. This being the law, Black may, at any time, if he so desires, make his final proof at the local land office, and although such proof will be rejected, yet it is all the law requires upon his part, and is sufficient to protect him against any stranger who initiates a right, subsequent in point of time to that of his. And in case Jackson receives the patent he can as well prosecute his action to declare Jackson his trustee, while off, as upon the land.

Bierer, having presided in the court below, not sitting; Tarsney, J., concurring; McAtee, J., and Keaton, J., dissenting.