BRENNAN *et al.* v. SHANKS.

No. 174.   Opinion Filed July 13, 1909.

(103 Pac. 705.)

1.   STIPULATIONS—Matters Concluded—Agreed Statement of Facts. The defendant, stipulating that the plaintiff in a forcible entry and detainer action is entitled to recover, unless a certain state of facts, as agreed by both plaintiff and defendant, constitutes a defense, waives any question as to variance between the allegata and probata.

2.   FORCIBLE ENTRY AND DETAINER—Grounds of Action—Equitable Relief—Color of Title—Necessity. Where two claimants to a lot by virtue of the Creek agreement of March 1, 1901 (Act. Cong. March 1, 1901, c. 676, 31 Stat. 861), have their rights finally disposed of before the Secretary of the Interior and such lot has been finally awarded to one of the claimants, such successful claimant then and there becomes entitled to the undisturbed possession of such lot as against the unsuccessful claimant, and by refusing to vacate the lot and continuing to occupy the same such unsuccessful claimant becomes a trespasser, and his possession is wrongful, and the court will give effect to the decision of the Secretary of the Interior in a forcible entry and detainer action.

(a) Whilst the unsuccessful claimant may have a right in a court of equity to have reviewed the decision of the Secretary of the Interior, where, by a misconstruction of the law applied to the facts, the title is erroneously awarded to the wrong claimant, yet this equitable relief cannot be had in a forcible entry and detainer action.

(b) The unsuccessful claimant, as a settler and occupier of such lot, is without color of title, within the purview of section 5087, Wilson's Rev. & Ann. St. 1903 (chapter 67, art. 13, sec. 160, Code Civ. Proc.)

(Syllabus by the Court.)

*Error from Tulsa County Court; N. J. Gubser, Judge.*

Action by Taylor Shanks against Francis R. Brennan and others. Judgment for plaintiff, and defendants bring error. Affirmed.

On the 25th day of January, 1908, there was lodged an appeal in the county court of Tulsa county, state of Oklahoma, from the justice of the peace court of the city of Tulsa, G. M. Litson, justice of the peace, in a certain forcible entry and detainer action, wherein Taylor Shanks, the defendant in error, was plaintiff, and John Pinkston, Francis R. Brennan, and T. M. Stanclift, the plaintiffs in error, were defendants. On the 25th day of February, 1908, the action was tried to the court without the intervention of a jury, and on request the court made a finding of facts, in words and figures as follows:

"Said Stanclift and said Brennan are partners doing business under the firm name of 'Capital Townsite Company,' and have been for nearly nine years last past. That in March, 1899, Eliza M. Baysinger was a widow, and had been for a number of years immediately prior thereto. That in March, 1899, said Baysinger was a duly enrolled and recognized citizen by blood of the Creek Tribe of Indians in the Indian Territory and resided therein adjoining what is now the town of Bixby, Okla. That in March, 1899, said Baysinger executed and delivered to the Capital Townsite Company, which was then composed of four persons, two of whom withdrew, as appears by an indorsement on said deed on March 17, 1899, her deed to a large part of the land which was in the months of January and February, 1902, surveyed and platted by the United States townsite surveyors under the authority of the Creek agreement, approved March 1, 1901, subject to the rights of the Creek Nation therein, and all the improvements thereon, and which deed, with the indorsements thereon is as follows:

" 'Fry, I. T., March 15, 1899. For one dollar cash in hand paid me by Capital Townsite Company, receipt whereof is hereby acknowledged, and also twenty per cent. of all proceeds received from the sale of all lots sold hereafter as collected, provided that said company shall not give away to any member of the townsite company more than one resident block and one fifty-foot bus-

iness lot, and for other good and valuable considerations, I, E. M. Baysinger, hereby grant, bargain, sell and convey, to Capital Townsite Company possession and right of occupancy of all the west half of section twenty-four, township seventeen north, range thirteen east of the Indian Meridian in the Creek Nation, Indian Territory, except the part inclosed by the John Barber fence and other reserves hereinafter specified, subject to the rights of the Creek Nation therein and all the improvements thereon, which said lands I have segregated from the lands of the Creek Nation for a townsite. I hereby reserve and do not sell any houses thereon, and keep one block for each of my two residences and upon which they are situated to be taken in conformity with the plat of said townsite and one fifty-foot business lot to be selected by me at the same time as company members select theirs. It is hereby expressly understood and agreed that no part of said section now broke and in cultivation by my tenants shall be disturbed by said townsite company, or their assigns until January 1, 1900, unless by the consent of the tenant cultivating the land and myself and upon paying me my unpaid share of the rent upon the land taken and paying the tenant tending the crop for the damages he may claim and upon erecting a good fence around the unfenced part of the land so taken from, said fence to be satisfactory to the tenant who is the owner of the crop and that I reserve the right to collect all unpaid rents for this season upon such cultivated land. Said townsite company is composed of T. M. Stanclift, F. R. Brennan, J. A. Friend and Mr. Robbins (the Tulsa real estate man). This conveyance is made to them for personal merit and should one, or more, die, decline or discontinue to take an active part in the affairs of said company, then, in that event, the interest of such person so dying, declining or discontinuing to take such active part shall revert back to and become vested in the remaining members. A majority of the townsite company may transact any and all townsite business. This conveyance shall not take effect and be in force until said company shall do some act of possession upon said land. [Signed] Eliza M. Baysinger. [Seal] Witnesses: [Signed] Wm. McBride. [Signed] Minnie G. Wilbanks. [50 cent revenue stamp, canceled.]'

"Indorsements on back:

"'Tulsa, I. T., March 17, 1899. We, J. A. Friend and C. H. Robbins, hereby decline to act and convey all our right, title

and interest herein to the remaining members of Capital Townsite Company. [Signed] J. A. Friend. [Signed] C. H. Robbins.'

" 'Indian Territory, Northern District—ss.: Be it remembered, that on the 5th day of February, 1902, before me, W. T. Reedy, a notary public in and for the district aforesaid, personally appeared Minnie G. McKim (*nee* Wilbanks), one of the subscribing witnesses to the foregoing deed, to me personally well known, who, being by me first duly sworn, on her oath states that she saw Eliza M. Baysinger, grantor in said deed, subscribe said deed on the day of its date for the uses, purposes and consideration therein expressed, and that she and Wm. McBride, the other subscribing witness, subscribed the same as attesting witnesses, at the request of said grantor, that said Eliza M. Baysinger was then a widow, and that affiant was then single, and her name was Minnie G. Wilbanks, and that she has since married R. A. McKim. In testimony whereof, I have hereunto set my hand and notarial seal at the district aforesaid this 5th day of February, 1902. [Signed] W. T. Reedy, Notary Public. '[Notary Seal.]'

" 'Northern District, Indian Territory. Filed Feb. 8, 1902, 2 p. m., for record. Recorded Book S. page 327. Chas. A. Davidson, Clerk U. S. Courts. United States of American, Indian Territory, Northern District—ss.: Certificate of Record. I, Charles A. Davidson, clerk of the United States court and *ex officio* recorder in and for the Northern district of the Indian Territory, do hereby certify that the instrument hereto attached was filed for record in my office on the 8th day of February, 1902, at 2 p. m., and duly recorded in Book S, page 327. Witness my hand and seal of said court at Muskogee, in said territory, this 17th day of February, 1902. [Signed] Charles A. Davidson, Clerk and *Ex Officio* Recorder, By [Signed] R. D. Owen, Deputy. [Seal of U. S. Court at Muskogee.]'

"Said deed covered the lot in controversy. That after the Capital Townsite Company procured said deed from Baysinger, beginning prior to March 25, 1899, it publicly claimed the right of possession to the lands covered by said deed and cut away brush and surveyed and platted streets, lots, and blocks, and sold rights of occupancy to numerous lots to various persons, and it was publicly understood throughout that community, and by plaintiff and those from whom plaintiff obtained possession of the

lot in controversy, that said Capital Townsite Company claimed the right to the possession of the lot in controversy at all times since the delivery of said Baysinger deed to them in March, 1899, as aforesaid. The Capital Townsite Company erected buildings on several lots in said town, but none on the lot in controversy. In March, 1899, before executing her said conveyance to Capital Townsite Company, Baysinger agreed with them that the land covered by her said deed should be townsite land, and selected 160 acres of land around said town for herself and each of her minor children (she being a widow), and agreed with them that she would not and did not select any part of said town land for the allotments of herself or any of her minor children. At the time of executing her said deed, Baysinger was, and had been for several years immediately prior thereto, in the possession of said town land and said allotment land and had large imrovements on said lands. Said Capital Townsite Company have at all times considered, handled, and treated said property as townsite property. The Capital Townsite Company and their grantor, Baysinger, wcre the direct cause of the starting of said town of Bixby, and it was entirely due to the work, energy, time, money, and ability used and expended by said Timothy M. Stanclift and Francis R. Brennan as said Capital Townsite Company and their grantees that said town continued to exist and prosper after it was started in March, 1899. Since within a month of the time said town was started, the United States government and the Creek tribal government have been at all times informed and acquainted with the acts of said Capital Townsite Company, their grantor and their grantees, in founding and upbuilding said town, and have never at any time expressed disapproval thereof. Said town has been a very great convenience to the community in which it is situated in furnishing and supplying all those necessities and conveniences which were before lacking in the way of post office, schools, doctors, medicines, hotels, stores, and so forth. At the time said town of Bixby was recognized as a town by the Secretary of the Interior, under the provisions of section 10 of said Creek agreement, no one disputed the rights of said Capital Townsite Company and their numerous grantees in and to the lots and lands in said town. The town of Bixby is not, and never has been a government townsite in any other sense than that it has been surveyed and treated as coming within the townsite provisions of the Creek agreement. At the time the town

of Bixby was started in March, 1899, the plaintiff resided in the Creek Nation, Ind. T., about a mile and a half from said town, and has resided near, but not in, said town ever since then. On December 23, 1901, the lot in controversy was forcibly taken from the possession of the Capital Townsite Company by 29 men. In January, 1902, the Capital Townsite Company brought forcible entry and detainer suit No. 4,553 in the United States court at Muskogee, Ind. T., against said 29 men. In February, 1902, said 29 men turned the possession of the lot in controversy over to the plaintiff, who kept possession of it continuously until July 10, 1903, when the Capital Townsite Company was restored to the possession of said lot and the improvements thereon by the United States marshal under a writ of restitution issued upon the judgment rendered in said case No. 4,553 in May, 1903. The Capital Townsite Company have been in possession of the lot in controversy either in person or by their tenants continuously from July 10, 1903, to the present time. The lot in controversy was officially appraised by the Creek townsite commission on May 23, 1902, at which time the building described in plaintiff's complaint was then upon said lot and was appraised by said commission as being a permanent improvement within the meaning of the Creek agreement and of the value of $75, and the lot was appraised by said commission at $140 exclusive of improvements.

"Under the rules and practice of the Department of the Interior the status of the lot in controversy was fixed for the purpose of the townsite provisions of the Creek agreement on May 23, 1902, the day it was appraised, and the rights of the claimants are determined as of that date. The plaintiff erected the building on the lot which the Creek townsite commission appraised on the lot as aforesaid. The defendants Francis R. Brennan and Timothy M. Stanclift were forcibly kept out of possession of said lot and from improving said lot, which they were ready, able, and willing to do before said lot was appraised on May 23, 1902, as aforesaid, by the plaintiff and the other 29 men from whom plaintiff obtained possession of said lot. The plaintiff and the defendants Stanclift and Brennan, as the Capital Townsite Company, made application to purchase said lot to the Creek townsite commission under the provisions of section 11 of the Creek agreement, and said commission scheduled said lot as 'contested.' The plaintiff's claim was based on the building erected on said lot as aforesaid. The claims of said Stanclift

and Brennan, as the Capital Townsite Company, were based on said Baysinger deed as conveying to them a right of occupancy of said lot within the meaning of the townsite provisions of the Creek agreement, on prior actual possession of this lot, on the ownership of the building erected by plaintiff as being a permanent improvement on the lot and a part thereof and, in law, the property of defendants under the circumstances under which it was erected, and on the further fact that, the defendants Stanclift and Brennan having been forcibly kept from improving the lot, their failure to improve it could not be set up by plaintiff to defeat their right to purchase the lot under the provisions of the Creek agreement, and on the still further fact that the rightful possession required by said section 11 could not be initiated by forcible entry on said lot, and that the Capital Townsite Company had to obtain said Baysinger deed in order to initiate peaceable entry on said lot.

"The contest over the lot in controversy was tried by the Department of the Interior, and in May, 1907, a final decision was rendered in said contest by the Secretary of the Interior upon facts found as stated herein in favor of Taylor Shanks, the plaintiff and against Stanclift and Brennan partners under the firm name and style of 'Capital Townsite Company'; the language of the secretary's decision being as follows: 'When the contestants undertook to take possession of all of that portion of the Creek Nation which is now embraced in the townsite of Bixby, they were intruders and had no right in and to any portion of the property. They did not have the right of occupany and were not in rightful possession of the lot in question at the time the improvements were placed on the lot by the contestee and are not entitled to have it scheduled to them under any of the sections of the agreement with the Creek Nation (Act March 1, 1901, 31 Stat. 861), relative to townsites.' Before the admission of the state of Oklahoma into the Union, plaintiff made a 10 per cent. payment upon one-half of the appraised value of said lot, or $7, to the United States Indian agent, Union Agency, and since then plaintiff has made to said agent an additional payment of 15 per cent., or $10.50, thereon. No patent to said lot has been issued by the Creek Nation. The defendant Stanclift and Brennan have been at all times, and are, able, ready, and willing to make all payments to the Creek Nation or the United States Indian agent for the benefit of the

Creek Nation, required by the townsite provisions of the Creek agreement or any law upon said lot. The defendant John Pinkston is a tenant upon said premises of the Capital Townsite Company under a written rental contract with them made July 8, 1907, and which expired by limitation November 8, 1907. Said Pinkston refuses to surrender possession of said premises to the Capital Townsite Company, dènies their title thereto, and claims that plaintiff is the owner of said premises and entitled to the rent thereof. The facts in regard to said premises were the same at the time this suit was commenced as they were at the time of the admission of the state of Oklahoma into the Union, with the exception of said 15 per cent. payment by. plaintiff on said lot."

Whereupon the court held that, as a matter of law, the facts as found did not constitute a defense to said action, and that the defendants Francis R. Brennan and T. M. Stanclift were guilty of an unlawful and forcible detainer of said lot 2 in block 15 in the town of Bixby; the appeal as to John Pinkston being dismissed for failure to prosecute. Judgment was thereupon rendered against the plaintiffs in error Francis R. Brennan and T. M. Stanclift. An appeal was prosecuted by petition in error, and is now here properly for determination.

*F. R. Brennan,* for plaintiffs in error.
*Biddison, Campbell & Eagleton,* for defendant in error.

WILLIAMS, J. (after stating the facts as above). The only question involved relative to the lot in controversy is the right of possession thereto. The lot is a part of the townsite of Bixby, which was laid off in accordance with the provisions of the Creek agreement of May 23, 1902. The defendant in error made application to the Creek townsite commission to have said lot scheduled and patented to him by virtue of his improvements thereon. At the same time the plaintiffs in error made like application to said commission, and at that time said lot was scheduled as "contested." The contest over said lot was tried by the Department of the Interior, and on May 7, 1907, a final decision rendered in favor of Taylor Shanks, the defendant in' error,

against the plaintiffs in error. The defendant in error has made all payments on said lot to the United States Indian agent in accordance with the regulation of the Interior Department and the provisions of the Creek treaty.

The jurisdiction of the Interior Department over the allotment of the Indian lands, and the segregation of townsites and the laying out and platting the same, and determining to whom the lots should be scheduled, is exclusive, subject to the right, after the title has been divested out of the Indian Tribe, to have same reviewed in a proper action by the courts. *Wallace v. Adams*, 143 Fed. 721, 74 C. C. A. 540; *Leak v. Joslin*, 20 Okla. (1 State) 200, 94 Pac. 518; *United States et al. v. Citizens' Trading Co.*, 19 Okla. 585, 93 Pac. 448.

In the case of *Brown v. Hartshorn*, 12 Okla. 123, 69 Pac. 1049, the court said:

"The only issue the court could determine in this case was whether the plaintiff Hartshorn, was entitled to the possession of the land in controversy at the time of bringing his action, and whether the defendant, Brown, forcibly kept him out of possession. It was admitted that Hartshorn had the homestead entry, that the Land Department had finally disposed of the contest before its tribunals, and that Brown was forcibly withholding from Hartshorn the possession of about five acres of the tract in dispute. Under these facts we think the court committed no error in rendering judgment of restitution. This court has repeatedly held that where two parties have been claimants to a tract of public land, and the adverse claims have been finally disposed of in the Land Department, and the successful claimant has been permitted to make homestead entry, such entryman then becomes entitled to the undisturbed possession of the tract as against the unsuccessful claimant, and such unsuccessful claimant, by refusing to vacate the land, and continuing to occupy the same, becomes a trespasser, and his possession is wrongful, and the courts will give effect to the decisions of the Land Department, so long as title is in the United States. *Woodruff v. Wallace*, 3 Okla. 355, 41 Pac. 357; *Reaves v. Oliver*, 3 Okla. 62; 41 Pac. 353; *Barnes v. Newton*, 5 Okla. 428, 48 Pac. 190, 49 Pac. 1074; *Cox v. Garrett*, 7 Okla. 375, 54 Pac. 546; *Calhoun v. McCornack*, 7 Okla. 347, 54 Pac. 493; *Glover v. Swartz*, 8 Okla.

642, 58 Pac. 943; *McDonald v. Brady,* 9 Okla. 660, 60 Pac. 509; *Barnett v. Ruyle,* 9 Okla. 635, 60 Pac. 243. We see no reason why one who has been determined by the proper tribunal rightfully entitled to the possession of a tract of public land should be forcibly kept, out of possession by one who proposes at some future time to wage a suit against him· to determine the correctness of such determination. Forcible detainer was the proper remedy in this action to determine the right to immediate possession. Nothing else was involved, and no other question could be determined. The answer and the evidence offered in support of the answer attempted to put in issue and have determined the right to the title, which could not be done in a purely possessory action."

In the case of *McQuiston v. Walton,* 12 Okla. 131, 69 Pac. 1048, the court said:

"The defendant below, McQuiston, admits that he and plaintiff were both claimants before the Land Department for the same tract of land, and that their claims have been finally determined in the Land Department in favor of Walton, and that the title is yet in the United States; but he alleges that the officers of the Land Department misapplied the land, and that he is entitled to acquire title to the land, and intends bringing his action in a court of equity to declare the patentee a trustee for him, and establish a resulting trust as soon as Walton shall make ·final proof and acquire the legal title. The question of title cannot be tried in this action, nor can the courts deal with the question of title as between adverse claimants so long as the fee rests in the United States. Under the homestead laws of the United States, the homestead entryman is entitled to the exclusive possession of the land as against a claimant whose rights have been adversely and finally determined by the officers of the Land Department. It is the duty of the courts to give effect to the decisions of the officers of the Land Department of the United States, and protect the possessory rights of those who have been determined to be entitled to the same. If the laws works a hardship or results in a loss of the prospective rights of any claimant, then such condition is a proper subject for legislation, and not for judicial cognizance."

In the case at bar the contest rights to such land, as between the claimants, have been finally determined by the Land Depart-

ment, rather the Department of the Interior, and it is the duty of the courts to protect this possession.

The plaintiffs in error insist that the declaration of the bill of particulars of the defendant in error, which declares:

"That he is the owner of and entitled to the possession of lot 2, in block No. 15, in the town of Bixby, and the one-room residence thereon; that prior to November 25, 1907, the defendants made an unlawful and forcible entry upon said premises and detained the possession thereof from the plaintiff unlawfully and by force of arms; that on the 25th day of November, 1907, notice was served on said defendants to vacate," etc.—

is such a variance from the facts as proved that the plaintiff for that reason was not entitled to prevail in the *nisi prius* court. But the record recites that:

"It is hereby agreed by and between the parties in open court that the plaintiff in this case is entitled to recover, unless the facts stated in Exhibit A (which are set out in the statement of facts) constitute a defense. These facts defendant offers to prove as a defense, and plaintiff objects for the reason that same are irrelevant and immaterial and do not constitute a defense, and it is agreed that, if the court holds that these facts constitute a defense, then they are to be considered as proven, and the defendants entitled to recover, and that there is no objection as to the form or wording in which Exhibit A is drawn, or in the form in which the facts stated therein are tendered as evidence, that, if any fact stated is irrelevant or immaterial, it shall not be held to preclude the consideration by the court of so much of the facts therein stated as the court shall find relevant and material, and the court shall note what parts, if any, of such statement, are not considered by the court in making its findings of fact and conclusions of law in this case, and that the defendants except to the action of the court in excluding each and every part of said statement. * * * "

It seems by this agreement that plaintiffs in error are precluded from raising any objection to any variance between the *allegata* and *probata*.

The Supreme Court of the territory of Oklahoma has uniformly held that where two parties have been claimants to a tract of public land, and their claims have been finally disposed

of in the Land Department, and the successful claimant has been permitted to make homestead entry, such entryman then, and there becomes entitled to the undisturbed possession of the tract as against the unsuccessful contestant and that unsuccessful contestant, by refusing to vacate the land and continuing to occupy the same, becomes a trespasser, and his possession is wrongful, and the courts will give effect to the decision of the Land Department so long as the title is in the United States. *Woodruff v. Wallace,* 3 Okla. 355, 41 Pac. 357; *Reaves v. Oliver,* 3 Okla. 62, 41 Pac. 353; *Barnes v. Newton,* 5 Okla. 428, 48 Pac. 190; *Cox v. Garrett,* 7 Okla. 375, 54 Pac. 546; *Calhoun v. McCornack,* 7 Okla. 347, 54 Pac. 493; *Glover v. Swartz,* 8 Okla. 642, 58 Pac. 943; *McDonald v. Brady,* 9 Okla. 660, 60 Pac. 509; *Barnett v. Ruyle,* 9 Okla. 635, 60 Pac. 243; *Cope v. Braden,* 11 Okla. 291, 67 Pac. 476; *Brown v. Hartshorn,* 12 Okla. 123, 69 Pac. 1049; *McQuiston v. Walton,* 12 Okla. 131, 69 Pac. 1048; *Bilyeu et ux. v. Pilcher,* 16 Okla. 228. 83 Pac. 546.

Such an action clearly comes under the provisions of section 5087, Wilson's Rev. & Ann. St. 1903 (chapter 67, art. 13, § 160, Code Civ. Proc.), wherein it is provided that forcible detainer may be maintained by the owner of premises against a settler or occupier thereof without color of title; the complainant having the right of possession. In this case, by virtue of the final decision of the Secretary of the Interior, the defendant in error, Shanks, was the owner of said lot and entitled to the possession thereof against the plaintiffs in error, who would be termed such "settlers" or "occupiers," unless they occupied same under color of title. They insist that they have a right in a court of equity to have reviewed the decision of the Secretary of the Interior, whereby a misconstruction of the law is applied to the facts, and he awarded the title to the lots to the wrong party; but this contention will not avail in a forcible detainer action. The right to prosecute such a claim in a court of equity does not constitute color of title.

In the case of *Dysart et al. v. Enslow,* 7 Okla. 386, 54 Pac.

550, it was held: That an action of forcible entry and detainer could not involve the exercise of equitable jurisdiction; that where the defendant pleads a special defense in his answer, alleging that the plaintiff's right of possession is based upon a certain instrument, denominated a "trust deed," executed by the defendant to the plaintiff, and as a defense to such action the defendant avers that such instrument is void because the plaintiff had made certain false and fraudulent representations in procuring said deed, the equitable powers and jurisdiction of the court cannot be invoked for the purpose of determining the title to the land in controversy, or to annul or cancel the so-called trust deed; and that testimony offered by the defendant to show that such deed was obtained by means of fraudulent representations was not competent in such an action.

Also, in the case of *Cope v. Braden,* 11 Okla. 291, 67 Pac. 476, it is said:

"This court has repeatedly held that an action for forcible entry and detainer is purely a proceeding at law, and does not and cannot involve the exercise of equitable jurisdiction. The right of possession is the only question involved."

Such is also the uniform holding of the courts of Nebraska and Ohio, which states have the same statutes as Oklahoma. *Railroad Co. v. Skupa,* 16 Neb. 341, 20 N. W. 393; *Bowers v. Pomeroy et al.,* 21 Ohio St. 184; *Brennan v. Cist,* 9 Ohio S. & C. P. Dec. 18, 6 Ohio N. P. 1; *Schmidt v. Schmidt,* 13 Ohio S. & C. P. Dec. 666; 10 Ohio N. P. 177; *Worden v. Klag,* 6 O. C. D. 359, 13 Ohio Cir. Ct. R. 627.

In the case of *Black v. Jackson,* 177 U. S. 362, 20 Sup. Ct. 653, 44 L. Ed. 806 (*Black v. Jackson,* 6 Okla. 751, 52 Pac. 406), the Supreme Court of the United States said:

"And we cannot find that that court has in any case withdrawn or qualified the ruling that an entryman, out of possession and having a decision by the land office in his favor, may proceed against his adversary in possession by an action in forcible retainer, and thus obtain possession without resorting to the extraordinary remedies used by courts of equity. According

to the decision of that court, Black, as between himself and his successful adversary, was in possession without color of title. Now, by the statutes of the territory, in the article relating to forcible entry and detainer, if it be found that lands and tenements, after a lawful entry, 'are held unlawfully,' then the justice 'shall cause the party complaining to have restitution thereof,' and it is provided that proeecdings under that article may be had in all cases 'where the defendant is a settler or occupier of lands and tenements, without color of title, and to which the complainant, has the right of possession.' "

Failing to find any reversible error in the record, the judgment of the lower court is affirmed.

Dunn, Hayes, and Turner, JJ., concur; Kane, C. J., not participating.